3 Cal.App.4th 618 (1992)
4 Cal. Rptr.2d 365
In re the Marriage of EMILY and JAMES MICHAEL WARD.
EMILY WARD HAYES, Respondent,
v.
JAMES MICHAEL WARD, Appellant.
Docket No. D012838.
Court of Appeals of California, Fourth District, Division One.
February 10, 1992.
*620 COUNSEL
James Michael Ward, in pro. per., for Appellant.
Kate Yavenditti for Respondent.
*621 OPINION
WORK, Acting P.J.
James Michael Ward appeals an order awarding attorney fees and costs to Emily Ward Hayes's pro bono counsel, payable to the San Diego Volunteer Lawyer Program (SDVLP). He essentially contends the trial court abused its discretion in awarding attorney fees, because representation was provided by SDVLP at no charge to Hayes and, in any event, the award was inappropriate and disproportionate. As we shall explain, the award was properly made and amply supported by the record. Accordingly, we affirm the order and direct the trial court to determine what award SDVLP is entitled to for reasonable attorney fees incurred on appeal.

FACTUAL AND PROCEDURAL BACKGROUND
In March 1989, SDVLP first assisted Hayes in connection with a small claims appeal regarding certain medical, psychological and other expenses and attorney fees incurred on behalf of the parties' minor child, Gerrit, while a ward of the juvenile court.[1] Upon reviewing this matter, SDVLP discovered Hayes was not receiving any child support from Ward, her ex-husband, nor was there any child support order. Consequently, SDVLP filed a child support action which resulted in a stipulated order dated June 30, 1989, requiring Ward to pay child support in the sum of $535 per month, commencing July 1, 1989. The parties' stipulation was based upon Hayes's gross monthly income from disability of $788 per month and Ward's claimed net monthly disposable income of $3,029. Regarding the small claims appeal, Hayes was ordered to reimburse Ward $916 for Gerrit's attorney fees in the juvenile court proceedings and various medical and psychological costs incurred in connection with those proceedings. The parties were ordered to participate in extended mediation/evaluation counseling with Dr. Ruth Roth regarding custody and visitation, the cost of which would be borne by Ward. The allocation of medical expenses incurred by both parties on behalf of Gerrit was reserved for further hearing.
*622 When Ward failed to pay child support timely, Hayes filed an order to show cause re contempt. That hearing was scheduled for August 21, but was taken off calendar when Ward avoided service. On August 10, Ward's counsel forwarded the July child support. However, on September 11, faced with a reduction of nearly 50 percent of her disability income, new evidence regarding Ward's accurate income and his failure to pay support, Hayes filed another order to show cause to modify child support accompanied by requests for security for support, attorney fees and reimbursement of medical expenses. Hayes encountered numerous delays regarding these requests, including several court appearances that were continued; a recalcitrant Ward who refused at his deposition to answer any questions pertaining to his financial status before June 30; difficulty in serving and apparent avoidance of service by Ward; his failure to pay August child support until November 22, when he belatedly sent medical information required by the June 30th order to be produced in 10 days; an October 11 hearing regarding Hayes's request for service on Ward's counsel; Ward's request for a continuance of his deposition which was granted; and Ward's refusal to continue Hayes's judgment debtor examination, which was taken off calendar when Hayes's counsel appeared and informed the court she had filed a bankruptcy petition.
On January 26, 1990, the trial court increased child support to $650 per month, beginning December 1, 1989, based on a finding Hayes's and Ward's respective incomes were $500 and approximately $3,200. Ward was further ordered to pay arrearages in child support within 90 days from the date of the order; to obtain and maintain a life insurance policy on his life at a face value amount of $70,000, naming Gerrit as primary irrevocable beneficiary; to pay for all his orthodontic care; and to pay SDVLP $3,000 as attorney fees and costs, payable at a rate of $100 per month commencing March 1, 1990, and payable on the first of each month thereafter until paid in full. The order specifically provided that if any payments become in arrears, the entire sum in attorney fees and costs is immediately due and payable.[2] On March 22, the court modified its order on Ward's motion for reconsideration to require him to pay Hayes $600 per month for child support, commencing December 1, 1989, and payable for eight months, then increasing to $650 per month on August 1, 1990.

*623 LEGAL SERVICE ORGANIZATIONS PROVIDING PRO BONO REPRESENTATION ARE ENTITLED TO RECEIVE ATTORNEY FEE AWARDS
SDVLP, a nonprofit organization providing indigents legal services without a fee, represented Hayes in these domestic disputes. SDVLP is funded from federal and state grants, charitable organizations, independent fund raising and court-awarded attorney fees. (1a) Contrary to Ward's assertion SDVLP is not entitled to receive court-awarded attorney fees because representation is provided to their clientele free of charge, federal and state precedent establishes legal service organizations, such as SDVLP, are entitled to receive attorney fee awards.
(2) Under Civil Code[3] section 4370, "[t]he purpose of the award is to provide one of the parties, if necessary, with an amount adequate to properly litigate the controversy." (In re Marriage of Sullivan (1984) 37 Cal.3d 762, 768 [209 Cal. Rptr. 354, 691 P.2d 1020]; In re Marriage of Aufmuth (1979) 89 Cal. App.3d 446, 466 [152 Cal. Rptr. 668], disapproved on other grounds in In re Marriage of Lucas (1980) 27 Cal.3d 808, 815 [166 Cal. Rptr. 853, 614 P.2d 285]; In re Marriage of Janssen (1975) 48 Cal. App.3d 425, 428 [121 Cal. Rptr. 701]; In re Marriage of Mulhern (1973) 29 Cal. App.3d 988, 996 [106 Cal. Rptr. 78].) Necessarily intertwined within this statutory design is the legislative intent of promoting access to the courts and providing adequate legal representation for those in need, primary cornerstones to the concept of fundamental fairness under the law. (In re Marriage of Swink (Colo.Ct.App. 1991) 807 P.2d 1245, 1247.) Indeed, within the family law context, "ready and available access to legal representation ... [promotes] the amicable settlement of dissolution and custody disputes, discourage[s] unfair settlements prompted by unequal bargaining power of the litigants, and afford[s] a necessary benefit to the litigants, their children, and to society." (Ibid.; see Benavides v. Benavides (1987) 11 Conn. App. 150 [526 A.2d 536, 538]; In re Marriage of Gaddis (Mo. Ct. App. 1982) 632 S.W.2d 326, 328-329; Ferrigno v. Ferrigno (1971) 115 N.J. Super. 283 [279 A.2d 141, 142].)
(1b) Ward asserts Hayes has failed to show the need for an award in order to finance her litigation, given that she was not required to pay her counsel for representation or costs incurred on her behalf. Ward's argument misses the mark. The concept of awarding "reasonably necessary" fees is designed to insure each party has equal access to legal representation in order to preserve all of his or her rights. (In re Marriage of Green (1989) 213 Cal. App.3d 14, 27 [261 Cal. Rptr. 294]; In re Marriage of Barnert (1978) 85 Cal. App.3d 413, 428 [149 Cal. Rptr. 616].) Consequently, the fatal flaw in *624 Ward's reasoning is that that degree of need which left Hayes at the doorstep of SDVLP does not disappear by the mere fact she is provided pro bono representation by the partially publicly funded legal entity, but rather transcends to the need of that entity for an appropriate fee award so that it can make available similar legal services to other needy litigants in domestic affair matters. (See In re Marriage of Swink, supra, 807 P.2d at p. 1248.)
Given "the economic realities of legal representation in these days and the maturing recognition of the morality and the social utility of legal assistance for those financially unable to retain counsel" (In re Marriage of Gaddis, supra, 632 S.W.2d at p. 328), the cited public policy considerations underlying the award of fees justify such shifting without regard to whether the party originally assumed the financial burden of representation and thus whether the services are provided by a publicly funded legal services organization or a privately funded law firm. In fact, an award of fees to a nonprofit legal services organization providing pro bono representation promotes the enforcement of legal obligations as much as an award to privately obtained counsel. Finite financial and manpower resources force such legal services organizations to ration their limited resources. Thus, by recovering fees, they are able to expand their indigent services. (See Shadis v. Beal (3d Cir.1982) 685 F.2d 824, 830; Dennis v. Chang (9th Cir.1980) 611 F.2d 1302, 1306.)[4] Consequently, the award of attorney fees to legal services organizations not only promotes the continuation of work on a particular client's case, but also permits the use of those funds with other resources to provide legal representation for other indigents. Indeed, given their existence, regardless whether publicly funded, their clients, no less than those of private counsel, "should be entitled to the leverage and protection which legislatures and courts provide through the award of attorney's fees in certain kinds of cases. In order to have the same force behind a threat to take legal action, a legal aid client should stand on the same basis as does a client with a private attorney." (Note, supra, 87 Harv.L.Rev. at p. 425.)
Specifically, within the family law context, indigents are often represented by legal services counsel.
"It would be unreasonable to allow a losing party in a family relations matter to reap the benefits of free representation to the other party. A party *625 should not be encouraged to litigate under the assumption that no counsel fee will be awarded in favor of the indigent party represented by public legal services; ... `Put in another way, the public should be relieved from the financial burden of obtaining an indigent plaintiff's divorce or successfully defending against a husband's complaint, to the extent that the husband is able to pay all or part of her attorney's fees. The taxpayer has an interest in recovering where possible a portion of the costs in these situations.' [Citation.]
"An award of counsel fees that does not discriminate against nonprofit legal service entities will encourage nonprofit counsel to expend its resources in the representation of those clients who are unable to afford private counsel in disputed child custody and child support enforcement litigation. The purposes of such acts as the Uniform Child Custody Jurisdiction Act ... are advanced and are made more available to the poor where there is an expectancy that the nonprofit legal services will recoup at least part of its resources through an award of counsel fees to its client. Furthermore, a realization that the opposing party, although poor, has access to an attorney and that an attorney's fee may be awarded deters noncompliance with the law and encourages settlements." (Benavides v. Benavides, supra, 526 A.2d at p. 538, quoting Ferrigno v. Ferrigno, supra, 279 A.2d at p. 142.)
Granted, the genesis of this rule of treating publicly-funded legal services organizations and privately funded firms alike in awarding attorney fees arises from awards made pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 United States Code, section 1988, various nonfamily contexts involving the private attorney general theory, and in other statutory nonmatrimonial contexts (see generally those examples set forth in Spoto v. McCarroll (1991) 250 N.J. Super. 66 [593 A.2d 375, 377-378]; Benavides v. Benavides, supra, 526 A.2d at pp. 537-538; Thompson v. Thompson (Mont. 1981) 630 P.2d 243, 244). However, the vast majority of other jurisdictions whose courts have addressed this issue have concluded "the award of counsel fees to the prevailing party is proper even when that party is represented without fee by a nonprofit legal services organization." (Benavides v. Benavides, supra, 526 A.2d at p. 537; accord, Spoto v. McCarroll, supra, 593 A.2d at pp. 378-379; Martin v. Tate (D.C. 1985) 492 A.2d 270, 274; In re Marriage of Brockett (1984) 130 Ill. App.3d 499 [474 N.E.2d 754, 756]; In re Marriage of Gaddis, supra, 632 S.W.2d at pp. 328-329; Butler v. Butler (Fla. Dist. Ct. App. 1979) 376 So.2d 287, 287; Love v. Love *626 (Fla. Dist. Ct. App. 1979) 370 So.2d 1231, 1231; Ferrigno v. Ferrigno, supra, 279 A.2d at p. 142; but see contra Thompson v. Thompson, supra, 630 P.2d at p. 244; In re Marriage of Magnuson (1987) 156 Ill. App.3d 691 [510 N.E.2d 437, 443-444].) We agree with the majority of jurisdictions finding there exists no reason to distinguish between publicly funded legal services organizations and privately funded legal entities in awarding attorney fees in matrimonial matters. In fact, the rationale underlying the award of fees in civil rights matters "of providing a means to pursue civil rights enforcement litigation, while not directly applicable in the matrimonial context, provides support for an award in this case. That is, it indirectly provides a means for litigants to actively pursue their rights in matters of custody and support, just as an award pursuant to the Civil Rights Act encourages individuals to pursue enforcement of their civil rights. The award of fees to legal services offices promotes this goal as much as an award to privately retained counsel. Moreover, it enhances the capabilities of legal services organizations, which have very limited resources to begin with, in representing indigent litigants in these endeavors." (Spoto v. McCarroll, supra, 593 A.2d at p. 379.)
SDVLP persuasively argues the federal and state governments have made the establishment and collection of child support orders a priority, recognizing the failure of absent parents to support children constitutes one of the major causes of poverty in America. The primary representation SDVLP provides for indigent parents in family law proceedings involves issues of child custody, visitation and support. By representing these parents in these matters, SDVLP confers not only a benefit on the particular family unit represented, but also society in general by promoting the protection and support of minor children. Presumably, obtaining and enforcing appropriate child support awards may well provide the financial differential to enable a custodial parent and child to cast aside reliance on public assistance.
In summary, statutory fee awards to entities like SDVLP promote the underlying public policy of increasing the availability of legal services to parties who might not otherwise be able to obtain counsel. It guarantees fair enforcement of the law, while replenishing exhausted funds enabling continued representation of the indigent in greater numbers. Moreover, awarding attorney fees to legal services organizations avoids a potential windfall for those parties in family law matters against whom fees would be ordered if the other party had private counsel based upon the provisions of sections 4370, 4370.5 and 4370.6. There appears to be no rational reason for advancing differential treatment, because such treatment would only benefit the more affluent parent and impose greater hardship upon the indigent.
*627 Finally, neither sections 4370[5] and 4370.5[6] nor case precedent require a party to establish any underlying private obligation to pay attorney fees in order to obtain an award for such fees. (Cf. Benavides v. Benavides, supra, 526 A.2d at p. 538; In re Marriage of Brockett, supra, 474 N.E.2d at p. 756.) Indeed, the sections make no distinction between parties who are represented by private counsel for a fee or those qualified by reason of indigency for representation by a legal services organizations or a pro bono attorney without a fee.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN AWARDING SDVLP THE CHALLENGED FEES
(3) Section 4370 authorizes the court in its discretion to award attorney fees and costs reasonably necessary to maintain or defend any dissolution or related proceeding. As already indicated, "[t]he purpose of the award is to provide one of the parties, if necessary, with an amount adequate to properly litigate the controversy." (In re Marriage of Sullivan, supra, 37 Cal.3d at p. 768.) Section 4370.5 was enacted in 1985 to supplement the general authorization for fee awards under section 4370 by originally specifying two primary factors for consideration in making such an award of (1) need, so as to enable each party to have sufficient financial resources to adequately present his/her case, and (2) the conduct of the parties, within the context of furthering or frustrating the policy of the law promoting settlement of litigation. (In re Marriage of Hublou (1991) 231 Cal. App.3d 956, 962 [282 Cal. Rptr. 695].) Among the various factors to be considered by a court *628 affixing reasonable attorney fees are "`the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]'" (In re Marriage of Cueva (1978) 86 Cal. App.3d 290, 296 [149 Cal. Rptr. 918], quoting Berry v. Chaplin (1946) 74 Cal. App.2d 652, 679 [169 P.2d 442].) Finally, the court has broad discretion in awarding attorney fees and costs in dissolution proceedings. Its determination will not be disturbed on appeal absent a clear showing of an abuse of discretion. (In re Marriage of Sullivan, supra, 37 Cal.3d at p. 768; In re Marriage of Czapar (1991) 232 Cal. App.3d 1308, 1318 [284 Cal. Rptr. 41].) "`[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]'" (In re Marriage of Sullivan, supra, 37 Cal.3d at p. 769, quoting In re Marriage of Cueva, supra, 86 Cal. App.3d at p. 296.)
(4) Here, the record amply supports the trial court's exercise of discretion in awarding SDVLP $3,000 in attorney fees. The trial judge, a former experienced family law practitioner, reviewed the entire record before awarding $3,000 in fees and costs. At the time of the January 26, 1991, hearing, Hayes's counsel estimated approximately 32 hours had been dedicated to this case. Her declaration supporting the request for attorney fees summarizes the substantial work done on behalf of Hayes, much of which was required only by Ward's less than cooperative conduct. In addition to the fees, the cost for attempted services on Ward was $136.50, the transcript cost was $50.40, and the deposition cost of Ward was $237.50. When confronted with the extent and nature of the services rendered, the trial court may rely on its own experience and knowledge in evaluating their reasonable value. (In re Marriage of Cueva, supra, 86 Cal. App.3d at p. 300.) On this record, Ward has failed to establish a clear abuse of discretion in making this eminently reasonable award.[7]
Finally, Ward's assertions the award is disproportionate because SDVLP only obtained a $65 increase in support provided in the stipulated support order and the motion for security for child support was denied in its entirety, are misleading and erroneous. Preliminarily, the fee award encompassed *629 extensive SDVLP representation services from March 1989. Secondly, not only did Hayes's counsel obtain the original, stipulated child support order, but also security for the child support by the court's order that Ward provide and maintain life insurance  an existing order ignored by Ward. In addition, SDVLP also obtained orders increasing child support to $650 on August 1, 1990, requiring payment of child support arrearages and establishing Ward's obligation to pay for medical insurance and uncovered medical, dental, orthodontic and psychological expenses.[8]
(5) Supported by the same rationale underlying the award for attorney fees to SDVLP at the trial level, SDVLP is entitled to reasonable attorney fees incurred in defending Ward's appeal challenging Hayes's entitlement to attorney fees payable to it. Under these circumstances, an award of fees on appeal is warranted if (1) Hayes can show a need for the award; (2) Ward has the ability to pay; and, (3) the appellate response was made in good faith and reasonable in character. (In re Marriage of Joseph (1990) 217 Cal. App.3d 1277, 1290-1291 [266 Cal. Rptr. 548]; see also, In re Marriage of Martin (1991) 229 Cal. App.3d 1196, 1201 [280 Cal. Rptr. 565].) SDVLP was justified on behalf of Hayes in defending against Ward's appeal and, in fact, has prevailed. Ward has never asserted inability to pay and Hayes's need which led her to the free services of SDVLP presumably remains unchanged. However, although this court has the power to render such an award, the trial court can better evaluate these latter factors in determining an appropriate amount to be awarded SDVLP for fees on appeal. (In re Marriage of Martin, supra, 229 Cal. App.3d at p. 1201; In re Marriage of Joseph, supra, 217 Cal. App.3d at p. 1291; In re Marriage of Davis (1983) 141 Cal. App.3d 71, 78 [190 Cal. Rptr. 104].)

DISPOSITION
The order is affirmed. Upon a costs memorandum or motion being filed by SDVLP, the trial court shall determine what award SDVLP is entitled to for *630 reasonable attorney fees incurred on appeal. SDVLP will recover costs on appeal.
Huffman, J., and Froehlich, J., concurred.
NOTES
[1] In March 1986, juvenile court proceedings were filed concerning Gerrit, who had been in the custody of Ward. Gerrit was removed from Ward's custody, placed in foster care for several months, and placed with Hayes in July 1986, in whose care and custody he has been ever since.

In federal court, Ward also sued Hayes, as well as the department of social services and various other officers and persons connected with the juvenile court proceedings which had resulted in his losing custody of Gerrit. SDVLP provided pro bono representation during the federal lawsuit which was later dismissed by Ward.
[2] The order also provided that each party shall pay one-half of psychiatric and/or psychological expenses incurred on behalf of Gerrit; Ward to pay all medical expenses incurred on behalf of Gerrit not covered by insurance, including deductibles and copayments, within 30 days of presentation by Hayes or the health care provider; Hayes inform Ward of any medical expenses so incurred unless the expenses are incurred in emergency situations; Ward's obligation to pay Hayes for certain psychological expenses be off-set by the obligations she owed him regarding the prior court order pertaining to legal fees for Gerrit in juvenile court.
[3] All statutory references are to the Civil Code unless otherwise specified.
[4] "Fee incentives to legal aid offices are essential to enable legal services organizations to provide more than individual, routine legal services for poor litigants. To a great extent, legal services organizations must allocate limited resources among various possible clients. Of necessity, the potential for fee recovery will be one of the factors considered in the allocation and use of resources for the maximum benefit of the poor." (Shadis v. Beal, supra, 685 F.2d at pp. 830-831; see Note, Awards of Attorney's Fees to Legal Aid Offices (1973) 87 Harv.L.Rev. 411, 414.)
[5] Section 4370 generally provides in subdivision (a) that the court within its discretion may order any party, except a governmental entity, to pay such amounts as "may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorney's fees." Subdivision (c) currently provides: "Notwithstanding any other provision of law, absent good cause to the contrary, the court, upon (1) determining an ability to pay and (2) consideration of the respective incomes and needs of the parties in order to ensure that each party has access to legal representation to preserve all of his or her rights, shall award reasonable attorney's fees to a custodial ... in any action to enforce an existing order for child support."
[6] Section 4370.5 currently and pertinently provides:

"(a) The court may make an award of attorneys' fees and costs under this chapter where the making of an award, and the amount of the award, is just and reasonable under the relative circumstances of the respective parties.
"(b) In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to adequately present his or her case, taking into consideration to the extent relevant to the circumstances of the respective parties described in subdivision (a) of Section 4801. The fact that the party requesting an award of attorneys' fees and costs has the resources from which he or she could pay his or her own attorneys' fees and costs is not itself a bar to an order that the other party pay part, or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."
[7] We note former section 4370, subdivision (c) authorized an award of attorney fees for child support enforcement based solely on the other party's ability to pay. Here, Ward never argued he did not have the ability to pay reasonable attorney fees. Rather, his counsel argued she was not entitled to fees because she was not responsible for them.
[8] Moreover, a fees award to a legal services organization should be determined at the reasonable market rate. (Serrano v. Unruh (1982) 32 Cal.3d 621, 642-643 [186 Cal. Rptr. 754, 652 P.2d 985].) "The prevailing federal view is that statutorily authorized fees are computed on the basis of the reasonable market value of the services rendered, without regard to the fact that counsel are employed by an organization funded by public or foundational monies. Whether it goes to private or `public' counsel, an award serves to prevent worthy claimants from being silenced or stifled because of a lack of legal resources." (Id. at p. 643, fn. & citation omitted.)