971 A.2d 345

**Jose HENRIQUEZ**

v.

**Ana S. HENRIQUEZ.**

**No. 1774, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 8, 2009.

Reconsideration Denied June 10, 2009.

466

Luiz R.S. Simmons (Auerback & Simmons on the brief), Silver Spring, for appellant.

Deena Hausner and Ashley R. Sikora of Baltimore, for appellee.

Panel: HOLLANDER, WOODWARD, GRAEFF, JJ.

GRAEFF, J.

This appeal arises from an award of attorney's fees granted in the custody phase of a divorce and custody case between Jose Henriquez, appellant, and Ana S. Henriquez, appellee. Following a two-day hearing on the issues of custody, visitation, and child support, the Circuit Court for Montgomery County ordered, among other things, that Mr. Henriquez pay $5,000 in attorney's fees to the House of Ruth Domestic Violence Legal Clinic (the "House of Ruth"), a non-profit organization that provided Ms. Henriquez with free legal representation at trial. On appeal, Mr. Henriquez presents

several issues for our review, which we have consolidated and reworded as follows:

1. Is a court authorized to award attorney's fees in a case where a party is represented by a non-profit legal services organization that does not charge the litigant a fee for its representation?

2. Did the circuit court properly exercise its discretion in awarding attorney's fees to the House of Ruth when the bill for attorney's fees was not provided in discovery prior to the custody proceeding? [1]

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in El Salvador on April 18, 1998, and they had two children during the marriage: Ana, born in 1998; and Jessica, born in 2000. Ms. Henriquez had one child prior to the marriage: Gloria, born in 1994. On December 27, 2005, Ms. Henriquez filed in the Circuit Court for Montgomery County a Complaint for Absolute Divorce, which included

---

1. Mr. Henriquez presented the following three questions in his brief:
 1. "Did the trial court err in ordering the Defendant to pay to the Plaintiff $5,000 for attorneys fees in the merits trial for custody, visitation and child support where the Plaintiff, and her counsel, The House of Ruth, admitted that the Plaintiff did not have a fee arrangement with the House of Ruth, that the House of Ruth did not charge the Plaintiff an hourly rate for services rendered in this case because it was a not for profit organization and the Plaintiff was not indebted to the House of Ruth for legal fees?"
 2. "Did the trial court err in ordering the Defendant to pay to the Plaintiff $5,000 for attorney fees in the merits trial of custody, visitation and child support where the record clearly shows that the Plaintiff did not incur any expenses for legal fees?"
 3. "Did the trial court err in permitting the Plaintiff to request attorney fees at the January 9, 2007 custody merits hearing where the Plaintiff and her counsel had stated in deposition that the Plaintiff did not owe any legal fees to the House of Ruth in connection with it's [sic] representation of her in these proceedings and further failed to disclose in Answers to Interrogatories and Request for Production of Documents any information asserting a claim to legal fees in the custody merits hearing?"

a request for the legal and physical custody of the children and "reasonable counsel fees and costs" of the proceedings. The circuit court bifurcated the trial to consider the issues of custody, visitation, and child support separate and apart from the grounds for divorce and property disposition issues.

On January 8 and 9, 2007, the court held proceedings on the custody and child support portion of the trial. At the conclusion of the first day of trial, Ms. Henriquez's attorney introduced into evidence an itemized bill for "Attorney's Fees for Custody, Visitation and Support Issues Only." The bill documented counsel's work on the case for 58.34 hours, at $200 per hour, for a total of $11,668. The bill covered the time period from May 19, 2006, to January 7, 2007.[2]

Mr. Henriquez objected to the introduction of the bill for attorney's fees. He argued as follows:

The objection is twofold so it's clear. Not only do we object to the introduction of the itemization, we object, Mr. Herrera [sic] objects to the request for counsel fees based upon the following history.

In this case, Your Honor, interrogatories, a request for production of documents, and a deposition was [sic] taken. Interrogatory No. 27, which I've made a copy of which I won't bother the Court now, but I'd like to mark and make it part of the record says, if you intend to produce or use any oral or written statements, photographs, video or sound recordings, and/or written documents in any trial or hearing of the case, please provide the following information. And then it goes on to ask for the information. In this particular case, the answer which I'll, [sic] provides no evidence or indication that there will be a statement of counsel fees. And again, the word is written documents. It's just not responsive, in fact, there's no response of course. And then there is the question of the request for production of documents, Request No. 40, a copy of which I have says,

---

**2.** The last three dates on the bill reflect work on January 5, 6, and 7, 2006. A review of the document, however, makes clear that the year listed for these entries was a mistake and should be 2007.

any and all documentary evidence which you or anyone on your behalf intends to introduce at the hearing of the matter. And the response is a copy of the photograph and marriage certificate produced. Again, I asked for documentary evidence.

Now we have asked for written documents and we have asked for documentary evidence and neither the exhibit which was marked is that or it's incorporeal evidence which we don't believe really exists. So we think that it should have been submitted.

Counsel for Mr. Henriquez then read excerpts from Ms. Henriquez's deposition, where counsel asked Ms. Henriquez whether she: 1) had "written any checks or paid any money to your lawyers for their legal services to you"; or 2) had "paid them any money to reimburse them from [sic] any costs that they have incurred in representing you in this case." Ms. Henriquez answered these questions in the negative.

Counsel for Mr. Henriquez further read to the court excerpts from the deposition where Ms. Henriquez's counsel responded to his questions regarding whether there was a fee agreement. Ms. Henriquez's counsel stated: "We don't charge money for our hourly legal services." She explained that, at the end of the case, Ms. Henriquez would not owe the House of Ruth any money, with the possible exception of reimbursement for expenses.[3]

Based on these discovery responses, Mr. Henriquez argued that "they ought to be stopped [sic] from asking for attorneys [sic] fees since we might have conducted things a little bit differently with regard to asking questions for example of the expert. How do you get from that to an $11,000 bill? So we object to it."

The court asked counsel for Ms. Henriquez if she wished to respond, and the following occurred:

---

3. No expenses were included in the itemized list of attorney's fees requested.

[COUNSEL FOR MS. HENRIQUEZ]: Yes, just briefly Your Honor. In terms of the interrogatories and the request for production of documents. As [counsel for Mr. Henriquez] stated, there was no specific request for any bill regarding the attorney's fees. And at the—

[THE COURT]: I understand.

[COUNSEL FOR MS. HENRIQUEZ]: At the time we produced documents there wouldn't have been much of a bill to produce anyway. And we did prepare the bill in anticipation—

[THE COURT]: Well, you have to update interrogatories as you go along so as to advise the other side.

[COUNSEL FOR MS. HENRIQUEZ]: Yes, Your Honor.

[THE COURT]: Did you tell [counsel for Mr. Henriquez] at any time that, prior to yesterday[,] that you were going to be charging attorney's fees?

[COUNSEL FOR MS. HENRIQUEZ]: In the complaint for absolute divorce it's very clearly stated that we are seeking—

[THE COURT]: No, after the complaint.

[COUNSEL FOR MS. HENRIQUEZ]:—attorney's fees.

[THE COURT]: That's why he was asking you the questions, because it was contained in the complaint.

[COUNSEL FOR MS. HENRIQUEZ]: Well, the deposition that was taken and that [counsel for Mr. Henriquez] referred to in this case was actually taken in connection with the second portion of this case, which is the divorce and property disposition portion of the case. And it was taken at a time that was after the period of discovery closed with respect to the custody merits portion of the trial, and it was actually taken after we were originally scheduled to be heard in the custody merits portion of the trial. So any questions that were asked in that deposition were to the issues as they relate to divorce of the parties and property disposition.

[THE COURT]: Okay. Let's go back to my original question.

[COUNSEL FOR MS. HENRIQUEZ]: So, no, we had not stated to [counsel for Mr. Henriquez] anything about asking for attorney's fees in the custody portion of the proceedings.

[THE COURT]: All right. And do you have a fee agreement?

[COUNSEL FOR MS. HENRIQUEZ]: No, we do not. As the Court—

[THE COURT]: Are you charging [Ms. Henriquez] an hourly rate for your services?

[COUNSEL FOR MS. HENRIQUEZ]: No. The House of Ruth is a not-for-profit organization. I am sure the Court is familiar, but—

[THE COURT]: Well, I don't know who employs you. I do not have any information about that one way or the other.

[COUNSEL FOR MS. HENRIQUEZ]: Okay. But there is case law that states that even nonprofit organizations who do not receive fees directly from their individual clients, are still entitled to collect attorney's fees in civil matters.

[THE COURT]: Okay. All right. [Counsel for Mr. Henriquez], you are on the record.

[COUNSEL FOR MR. HENRIQUEZ]: Thank you.

Mr. Henriquez testified that he paid his attorney a $5,000 fee to represent him at trial. In closing argument, both attorneys discussed the issue of an award of attorney's fees. Ms. Henriquez argued as follows:

Finally and just briefly, we have submitted a bill for attorneys' fees and would ask the Court to order the payment of fees by Mr. Henriquez. And the case of *Blum v. Stenson*, which is a United States Supreme Court case, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891, permits the ordering of attorneys' fees even when a party is represented by a non-profit public interest law firm. Thank you.

Mr. Henriquez responded as follows:

I would say that I think there is something fundamentally wrong when you get no answers to the discovery on a particular issue and then, as I read to the Court, you

explicitly ask it over and over again and you get the response "We don't charge." It wasn't we don't charge for this, but we charge, [sic] "We don't charge." We believe that they ought to be estopped from asking for counsel fees in view of what their representation was and that's a matter of record. Thank you very much.

After hearing argument from both parties, the court awarded attorney's fees to Ms. Henriquez. The court explained its decision as follows:

The Court also believes that there should be some award of fees for representation given that essentially Mrs. Henriquez is wholly dependent and went to a community services organization for her representation. She's virtually penniless as far as I can tell. Mr. Henriquez makes what he makes.[4] Any payment to counsel obviously goes out of the family pocket and into, into counsel's pocket. Mr. Henriquez has made a payment of $5,000 to [his attorney]. I think that represents an exceptionally reasonable amount and I make an award of a similar amount to, for counsel fees....

The award of fees to the plaintiff are for purposes of costs and to whatever extent attorneys' fees have been expended.

On June 20–21, 2007, over five months after the custody and child support portion of the trial concluded, the court heard testimony regarding the grounds for divorce and property disposition issues, which are not at issue in this appeal. On August 13, 2007, the court issued a Judgment of Absolute Divorce. The court ordered, among other things, that "Defendant shall pay to the Plaintiff's counsel, the House of Ruth Domestic Violence Legal Clinic, the sum of Five Thousand Dollars ($5,000.00) for attorney's fees...." This timely appeal followed.

## DISCUSSION

Mr. Henriquez contends that the circuit court erred in awarding attorney's fees to Ms. Henriquez. He advances two

---

4. Ms. Henriquez testified that he earned $60,000 in 2006.

arguments in support of this contention. First, he argues that the award of attorney's fees was improper because the House of Ruth is a non-profit legal services organization that did not charge Ms. Henriquez a fee for its representation; he argues that a court is authorized to award attorney's fees only when a party actually incurs expenses for legal fees. Second, Mr. Henriquez argues that Ms. Henriquez's claim for attorney's fees is barred because she failed to disclose in discovery any information in support of a claim for attorney's fees.

Ms. Henriquez, on the other hand, argues that the court properly awarded her attorney's fees, stating that it is immaterial whether a party personally incurred legal expenses. She argues that "non-paid legal counsel are entitled to court-ordered awards of attorney's fees in the same way as paid counsel," and that "attorney's fee awards to private, not-for-profit legal services organizations, such as the House of Ruth, further the public interest of creating an equitable system of justice and should be upheld by this Court." With respect to the alleged discovery violation, Ms. Henriquez states that the court did not abuse its discretion in awarding attorney's fees because the pleadings gave notice that she was seeking attorney's fees, and Mr. Henriquez's counsel did not ask questions during discovery that specifically requested information regarding the claim for fees.

## A.

### Award of Attorney's Fees to Non–Profit Organization

■ Maryland generally follows the " 'American rule,' " which provides that " 'each party to a case is responsible for the fees of its own attorneys. . . .' " *Royal Inv. Group, LLC v. Wang,* 183 Md.App. 406, 456, 961 A.2d 665 (2008) (quoting *Friolo v. Frankel,* 403 Md. 443, 456, 942 A.2d 1242 (2008)). There are exceptions to this rule, however, including when " 'there is a statute that allows the imposition of such fees.' " *Id.* (quoting *Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 445, 952 A.2d 275 (2008)).

The circuit court here awarded Ms. Henriquez attorney's fees pursuant to Md.Code (2006 Repl.Vol.), § 12–103 of the Family Law Article ("F.L."), which provides:

(a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or

(2) files any form of proceeding:

(i) to recover arrearages of child support;

(ii) to enforce a decree of child support; or

(iii) to enforce a decree of custody or visitation.

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

(c) *Absence of substantial justification.*—Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

Mr. Henriquez makes no claim that the attorney's fee award here was not reasonable; nor does he claim that the award was not based on the factors set forth in the statute. Rather, Mr. Henriquez's sole argument is that a court cannot order an award of attorney's fees to a party who did not personally incur expenses for legal fees.

█ █ A court's decision to award attorney's fees generally is reviewed under an abuse of discretion standard. *Petrini v. Petrini,* 336 Md. 453, 468, 648 A.2d 1016 (1994) ("Decisions concerning the award of counsel fees rest solely in the discre-

tion of the trial judge."); *Malin v. Mininberg*, 153 Md.App. 358, 435-36, 837 A.2d 178 (2003) (the "trial court 'is vested with wide discretion' in deciding whether to award counsel fees and, if so, in what amount.") (quoting *Dunlap v. Fiorenza*, 128 Md.App. 357, 374, 738 A.2d 312 (1999)). If the court gives proper consideration to the statutory factors and the circumstances of the case, an award of attorney's fees will not be reversed " 'unless a court's discretion was exercised arbitrarily or the judgment was clearly wrong.' " *Collins v. Collins*, 144 Md.App. 395, 447, 798 A.2d 1155 (2002) (quoting *Petrini*, 336 Md. at 468, 648 A.2d 1016). In this case, however, Mr. Henriquez's argument is that a court has no authority under the statute to award attorney's fees unless that party actually incurred expenses for legal fees. This contention is reviewed *de novo. See Nesbit v. Government Employees Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879 (2004) ("When the trial court's order 'involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.' ") (quoting *Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609 (2002)); *Jones v. Rosenberg*, 178 Md.App. 54, 68, 940 A.2d 1109 ("Questions of law decided by the trial court are subject to a *de novo* standard of review."), *cert. denied*, 405 Md. 64, 949 A.2d 652 (2008).

In determining the scope of the statutory authority to award attorney's fees pursuant to F.L. § 12–103, we must apply well-established principles of statutory interpretation:

[O]ur primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 420, 918 A.2d 470, 482 (2007); *Gen. Motors Corp. v. Seay*, 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Kelly*, 397 Md. at 419–20, 918

A.2d at 482; *Kane v. Bd. of Appeals of Prince George's County*, 390 Md. 145, 167, 887 A.2d 1060, 1073 (2005). Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences. *See Roskelly v. Lamone*, 396 Md. 27, 53, 912 A.2d 658, 673 (2006); *So. Easton Neighborhood Assoc. v. Town of Easton*, 387 Md. 468, 495, 876 A.2d 58, 74 (2005); *Smack v. Dep't of Health & Mental Hygiene*, 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003) ("[T]he statute must be given a reasonable interpretation, 'not one that is illogical or incompatible with common sense.'"). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *Kelly*, 397 Md. at 419, 918 A.2d at 482; *City of Frederick v. Pickett*, 392 Md. 411, 427, 897 A.2d 228, 237 (2006); *Davis v. Slater*, 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004). If, however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose. *Kelly*, 397 Md. at 419–20, 918 A.2d at 482; *Oakland v. Mountain Lake Park*, 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *Canaj, Inc. v. Baker & Division Phase III*, 391 Md. 374, 403, 893 A.2d 1067, 1084 (2006).

*Taylor v. Mandel*, 402 Md. 109, 128–29, 935 A.2d 671 (2007).

Accordingly, we start, as we must, with the plain language of the statute. *See Lawson v. State*, 389 Md. 570, 583, 886 A.2d 876 (2005) ("Legislative intent must be sought in the first instance in the actual language of the statute."); *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221 (2003) ("[S]tatutory interpretation begins, and usually ends, with the statutory text itself"). The language of § 12–103(b) makes clear that there are three factors that the court must consider in determining whether to award attorney's fees in a case involving custody, support or visitation of a child: "(1) the financial status of each party; (2) the needs of each party; and (3) whether there was a substantial justification for bringing, maintaining, or defending the proceeding." There is nothing in the language of the

statute that requires a court to consider the status of the legal services provided or whether a party actually incurred legal fees.

Mr. Henriquez, in arguing that a required consideration in awarding attorney's fees is whether the party actually incurred expenses, is attempting to insert a consideration not listed by the General Assembly. This is not in accord with settled rules of statutory interpretation. *See Bost v. State,* 406 Md. 341, 350, 958 A.2d 356 (2008) (" 'We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning.' ") (quoting *Stoddard v. State,* 395 Md. 653, 662, 911 A.2d 1245 (2006)).

By its plain terms, § 12–103 sets forth three factors that the court is required to consider before it may, in its discretion, award reasonable attorney's fees.[5] The criteria set forth in the statute do not include the status of the legal services provider as a factor that must be considered by the court. Accordingly, pursuant to the plain language of the statute, there is no *per se* bar to awarding attorney's fees to a party who is represented by a non-profit organization that provides the party with free legal representation.[6]

Our interpretation of § 12–103 is consistent with that of other states that have addressed this issue in the family law

---

**5.** When a case permits attorney's fees to be awarded, only reasonable fees are permitted, "taking into account such factors as labor, skill, time, and benefit offered to the client...." *Petrini v. Petrini,* 336 Md. 453, 467, 648 A.2d 1016 (1994).

**6.** The Standing Committee on Pro Bono Legal Service, which was created by Rule 16–901(a), is charged, in part, with providing guidance to lawyers about the pro bono rules. Rule 16–901(b)(5). It has opined:

A lawyer in a pro bono case may seek an amount of counsel fees, and if they are awarded, may accept them. The matter remains a pro bono case even though fees are awarded, as long as the lawyer did not have an expectation of receiving a fee when he or she took the case....

Answer No. 28 to "Frequently Asked Questions," Maryland Judiciary Website, http://www.mdcourts.gov/probono/faq.html.

context. In *Benavides v. Benavides,* 11 Conn.App. 150, 526
A.2d 536, 537 (1987), the plaintiff requested attorney's fees in
connection with her claim for child support and custody of her
children. Ms. Benavides was represented by Connecticut
Legal Services, Inc., a nonprofit organization. *Id.* at 537.
She claimed attorney's fees in the amount of $2,100, which the
trial court found to be justified. *Id.* The court reduced the
amount awarded, however, because her counsel was employed
by a nonprofit organization. *Id.* The Appellate Court of
Connecticut reversed, finding that the criteria set forth in the
statute authorizing attorney's fees made "no provision for any
consideration of the status of the legal services rendered, be it
private counsel or nonprofit counsel...." *Id.* at 538. The trial
court, in focusing on the "nonprofit status" of counsel, intro-
duced a factor not contained in the statute. *Id.*[7]

Similarly, in *In re Marriage of Ward,* 3 Cal.App.4th 618,
626, 4 Cal.Rptr.2d 365 (Cal.Ct.App.1992), the Court of Appeal
of California held that legal services organizations providing
pro bono representation to indigents are eligible to receive
attorney fee awards in matrimonial matters. The court noted
that the statutes authorizing a court to make an award of
attorney's fees set forth various considerations for the court to
consider, none of which included establishing "any underlying
private obligation to pay attorney's fees in order to obtain an
award for such fees." *Id.* at 627, 4 Cal.Rptr.2d 365.

Other states have similarly construed their statutes. *See In
re Marriage of Brockett,* 130 Ill.App.3d 499, 85 Ill.Dec. 794,
474 N.E.2d 754, 756 (1984) (trial court erred in refusing to
award attorney's fees to legal services office on the basis that

---

7. The appellate court noted that the trial court, "in exercise of its
inherent equitable powers may consider factors other than those enu-
merated in the statutes if such factors are appropriate for a just and
equitable resolution" of the dispute. *Benavides v. Benavides,* 11 Conn.
App. 150, 526 A.2d 536, 538 (1987). In that case, however, the trial
court made no effort to show how a reduction of fees solely because of
counsel's nonprofit status was appropriate. *Id.* at 539. Accordingly,
the appellate court found the reduction of the fee to be arbitrary and
erroneous and ordered that the case be remanded to award the full
amount of counsel fees. *Id.*

Ms. Brockett had not "incurred" fees; statute "does not expressly limit a fee awarded to a legal services office"); *In re Marriage of Gaddis,* 632 S.W.2d 326, 328 (Mo.Ct.App.1982) (Legal Aid attorney may be granted attorney's fees in divorce action; "representation by a Legal Aid attorney is not a relevant factor in determining the propriety or amount of an award of attorneys' fees" under statute authorizing an award of fees); *In re Marriage of Malquist,* 266 Mont. 447, 880 P.2d 1357, 1364 (1994) (statute sets forth factors to consider in determination of whether to award attorney's fees, but no language that precludes a court from awarding attorney's fees "merely because the attorney representing the indigent party has agreed to not charge the client for his or her professional services"), *overruled on other grounds by In re Marriage of Cowan,* 279 Mont. 491, 928 P.2d 214 (1996); *Olson v. Olson,* 438 N.W.2d 544, 548 (S.D.1989) (statute authorizing courts to award attorney's fees in a divorce case provides "no exception . . . that denies attorney fees where a party is represented by free legal services"); *Pearson v. Pearson,* 200 W.Va. 139, 488 S.E.2d 414, 426 (1997) ("In our review of this statute we have not discerned an intent, express or implied, by the legislature that attorney's fees are not to be awarded to a party receiving free legal services.").

Mr. Henriquez cites no case law or legislative history in support of his contention that "[t]he Family Law Article clearly contemplates that an Order for the payment of attorney fees is founded upon a party's incurring legal fees in connection with the prosecution or defense of a proceeding." Instead, he relies solely on language in F.L. § 7–107 and Md. Rule 1–341. Neither supports his contention.

Section 7–107, which authorizes attorney's fees in divorce proceedings, provides, in part, as follows:

(a) *Definition.*—In this section, "reasonable and necessary expense" includes:

(1) suit money;

(2) counsel fees; and

(3) costs.

(b) *Award authorized.*—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

(c) *Considerations by court.*—Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding.

Mr. Henriquez notes that § 7–107(b) authorizes the court to order either party to pay the other party an amount for the reasonable and necessary "expense" of prosecuting or defending the proceeding. He argues: "The word *expense* is defined as something *paid out* to attain a goal or accomplish a purpose . . . something requiring the *expenditure* of money."

This contention fails for two reasons. First, Mr. Henriquez's reliance on § 7–107 is misplaced. As indicated, the attorney's fees here were awarded pursuant to F.L. § 12–103, not § 7–107.

██ Second, we do not agree that the language of § 7–107 "clearly contemplates" that an award of attorney's fees is proper only if the party incurs legal fees. Section 7–107 is one of four statutes in the Family Law Article that relates to dissolution of a marriage and authorizes an award of attorney's fees. *See* § 7–107 (divorce proceedings); § 8–214 (property disposition); § 11–110 (alimony); and § 12–103 (child custody, support and visitation). Although the language of the statutes varies somewhat, we have found nothing in the legislative history for these statutes that indicates an intent that different standards apply before a judge may order an award of attorney's fees. We presume that the General Assembly "intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law." *State v. Bricker,* 321 Md. 86, 93, 581 A.2d 9 (1990).

Indeed, each of these statutes contains essentially the same required considerations. Under all four statutes, the court can award attorney's fees only after considering: (1) the financial resources and financial needs of both parties; and (2) whether there was a substantial justification for prosecuting or defending the proceeding. *See Harbom v. Harbom,* 134 Md.App. 430, 464, 760 A.2d 272 (2000) (Although factors required for an award of attorney's fees pursuant to §. 12–103 and § 11–110 are "phrased slightly differently," the judge must " 'undertake the same investigation before making an award of attorney's fees.' ") (quoting *Lemley v. Lemley,* 109 Md.App. 620, 633, 675 A.2d 596 (1996)). None of these statutes lists as a required consideration the status of the legal services rendered or whether a party actually incurred legal fees.[8]

Mr. Henriquez's reliance on Md. Rule 1–341 is similarly unavailing. Md. Rule 1–341 provides that a court may award "the reasonable expenses, including reasonable attorney's fees, **incurred** by the adverse party" as a result of the bad faith conduct of the other party. (Emphasis added). The plain language of Md. Rule 1–341, unlike the language in the F.L. statutes, limits the attorney's fees that can be awarded to fees "incurred" by the party.

In *U.S. Health, Inc. v. State,* 87 Md.App. 116, 131, 589 A.2d 485, *cert. denied,* 324 Md. 69, 595 A.2d 482 (1991), this Court stated that the language of Md. Rule 1–341 provides "for reimbursement of expenses, including reasonable counsel fees,

---

8. A bill was introduced this legislative session to specifically provide authority for an award of attorney's fees for pro bono representation. S.B. 474, Reg. Sess.2009. The bill proposed that F.L. § § 7–107, 8–214, 11–110 and 12–103 be amended to include the following language: **"THE COURT MAY AWARD AN AMOUNT FOR THE REASONABLE AND NECESSARY EXPENSE OF PROSECUTING OR DEFENDING A PROCEEDING UNDER THIS SECTION TO A LAWYER, A LAW FIRM, OR AN ORGANIZATION THAT REPRESENTS A PARTY FREE OF CHARGE."** The bill subsequently was withdrawn; the bill file contains a note from its sponsor suggesting that the Senate Judicial Proceedings Committee wanted to wait for the appellate courts to resolve whether the amendment was necessary.

actually incurred." The Court noted, however, that if a statute authorizes payment, not for fees incurred, but for a reasonable attorney's fee, "it is not unreasonable to base the fee on 'prevailing market rates' in the community, whether the prevailing party is represented by retained counsel, in-house counsel or non-profit counsel." *Id.* at 129, 589 A.2d 485 (citing *Blum v. Stenson,* 465 U.S. 886, 889, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

In *Blum,* the United States Supreme Court considered, in a civil rights action, "whether it was proper for the [trial court] to use prevailing market rates in awarding attorney's fees to nonprofit legal services organizations," or whether attorney's fees should be "calculated according to the cost of providing legal services." 465 U.S. at 892, 896, 104 S.Ct. 1541. Rejecting the contention that attorneys with the Legal Aid Society of New York should be limited to recovering attorney's fees for the actual "cost of providing legal services," *id.* at 892, 104 S.Ct. 1541 the Supreme Court concluded that "reasonable fees" "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Id.* at 895, 104 S.Ct. 1541. *Accord Shapiro v. Chapman,* 70 Md.App. 307, 316, 520 A.2d 1330 (1987) (the prevailing party in a civil rights action under 42 U.S.C. § 1983 is entitled to attorney's fees even if they "were represented by a publically funded, nonprofit law office.").

The Family Law statutes discussed herein provide for reasonable attorney's fees.[9] And, as indicated, the plain language of the statutes shows that the trial court is not required to consider the status of the legal services rendered before awarding attorney's fees.

---

9. F.L. § § 7–107, 8–214 and 11–110 specifically authorize an award for reasonable attorney's fees. Section 12–103 authorizes an award for attorney's fees "that are just and proper under all the circumstances . . .," which the Court of Appeals and this Court have interpreted as authorizing an award of "reasonable" fees. *See Petrini,* 336 Md. at 467, 648 A.2d 1016; *Barton v. Hirshberg,* 137 Md.App. 1, 32, 767 A.2d 874 (2001).

There are also important policy considerations that weigh in favor of allowing courts to award attorney's fees to a non-profit legal services organization, or a pro bono attorney, in family law cases. In *Malquist,* 880 P.2d at 1363, the Supreme Court of Montana explained the importance of access to an attorney in family law cases, which implicate child support and custody issues:

We live in a society where, next to health care, competent legal service is likely the most essential, yet most costly, professional service that most people from time to time require. That is certainly no more evident than in domestic relations cases wherein the court's decision will likely involve important property questions and will forever alter the personal relationships and obligations of the litigants to each other. More importantly, however, at issue in many such cases are the relationships of children to their parents and the fundamental rights of those children to food, clothing, shelter, education, medical care, support, and to a safe and reasonably stable home life. The multiplicity of laws and often technical court rules and procedures governing domestic relations cases combined with the emotionally charged nature of such proceedings, present a mine field to the litigant who is too poor to hire competent counsel.

The court noted that the "principle of providing equal access of justice to all" warrants the award of attorney's fees to persons represented by legal services organizations or a pro bono attorney. *Id.* at 1364. Accordingly, the court held that an award of attorney's fees is authorized under the statute if "the requesting party shows necessity-i.e. the inability to pay for legal representation," as well as the reasonableness of the fees. *Id.* at 1365. "Whether a party incurs debt is irrelevant, and necessity is unrelated to the status of the attorney who delivers the legal services." *Id.*

In *Benavides,* the Appellate Court of Connecticut noted additional policy reasons for allowing attorney's fees for non-profit counsel:

We are aware that indigents are represented by legal services attorneys in a large number of family relations matters. It would be unreasonable to allow a losing party in a family relations matter to reap the benefits of free representation to the other party. A party should not be encouraged to litigate under the assumption that no counsel fee will be awarded in favor of the indigent party represented by public legal services ... or as in this case, that a reasonable fee will be discounted for the same reason. "Put in another way, the public should be relieved from the financial burden of obtaining an indigent plaintiff's divorce or successfully defending against a husband's complaint, to the extent that the husband is able to pay all or part of her attorney's fees. The taxpayer has an interest in recovering where possible a portion of the costs in these situations."

An award of counsel fees that does not discriminate against nonprofit legal service entities will encourage nonprofit counsel to expend its resources in the representation of those clients who are unable to afford private counsel in disputed child custody and child support enforcement litigation. The purposes of such acts as the Uniform Child Custody Jurisdiction Act in Connecticut, [ ] are advanced and are made more available to the poor where there is an expectancy that the nonprofit legal services will recoup at least part of its resources through an award of counsel fees to its client. Furthermore, a realization that the opposing party, although poor, has access to an attorney and that an attorney's fee may be awarded deters noncompliance with the law and encourages settlements.

526 A.2d at 538 (citations omitted).

Other courts similarly have cited to policy considerations in holding that a party in a family law case is not precluded from recovering attorney's fees. *See Ward,* 3 Cal.App.4th at 624, 4 Cal.Rptr.2d 365; *In re Marriage of Swink,* 807 P.2d 1245, 1248 (Colo.Ct.App.1991); *Benavides,* 526 A.2d at 538; *Lee v. Green,* 574 A.2d 857, 860 (Del.1990); *Brockett,* 85 Ill.Dec. 794, 474 N.E.2d at 756; *Hale v. Hale,* 772 S.W.2d 628, 630 (Ky. 1989); *Gaddis,* 632 S.W.2d at 329; *Malquist,* 880 P.2d at

1362–63; *Miller v. Wilfong,* 121 Nev. 619, 119 P.3d 727, 730 (2005); *Ferrigno v. Ferrigno,* 115 N.J.Super. 283, 279 A.2d 141, 142 (1971). *See also Martin v. Tate,* 492 A.2d 270 (D.C.1985); *Love v. Love,* 370 So.2d 1231 (Fla.Dist.Ct.App. 1979).

We join the majority of jurisdictions that have ruled on this issue. Based on the plain language of F.L. § 12–103, and the policy concerns implicated, we hold that a court may, in its discretion and after considering the requisite statutory factors, award reasonable attorney's fees in a case where a party is represented by a non-profit legal services organization, or a pro bono attorney, irrespective of whether a fee agreement exists between the client and the attorney.[10]

## B.

### Discovery

Mr. Henriquez next claims that, even if the court was authorized to award attorney's fees to the House of Ruth, the court abused its discretion in awarding fees under the facts of this case because Ms. Henriquez did not disclose in discovery that she would be seeking an award of attorney's fees. He cites to an interrogatory question wherein he asked Ms. Henriquez to itemize all current debts and liabilities, and he notes that her response did not mention legal fees incurred.

---

10. F.L. § 12–103 authorizes an award of attorney's fees "to either party." Mr. Henriquez does not challenge the propriety of the attorney's fee award on the ground that the order directed him to pay the House of Ruth, rather than Ms. Henriquez. F.L. § § 7–107(f), 8–214(f), and 11–110(f), expressly provide that the court may order that the attorney's fees awarded "be paid directly to the lawyer." Section 12–103, which was enacted before these provisions, does not include this language. Because the issue was not raised on appeal, we will not address the issue whether fee awards pursuant to § 12–103 may be made payable directly to the attorney. We note, however, that other courts have interpreted statutes with language similar to § 12–103 as allowing fee awards to be awarded to pro bono counsel to avoid a windfall to the litigant. *See, e.g., Gonzalez v. Astrue,* 564 F.Supp.2d 317, 321–22 (2008) (construing 28 U.S.C. § 2412, which provides that a court may award reasonable attorney's fees "to the prevailing party," to authorize an award of attorney's fees to pro bono counsel).

Mr. Henriquez further cites to a Request for Production of Documents, which asked Ms. Henriquez for all documentary evidence that she intended to introduce at trial, and he notes that her response made no mention of an itemized statement for attorney's fees. Mr. Henriquez argues that Ms. Henriquez's failure to provide him with evidence of her claim for legal fees prior to trial was a violation of Md. Rule 2–401(e).[11] He argues further that Ms. Henriquez not only failed to disclose a claim for legal fees in discovery, but she further "affirmatively denied" in her deposition that she was asserting a claim for legal fees.

Ms. Henriquez argues that she properly notified Mr. Henriquez of her intention to seek attorney's fees in her Complaint for Absolute Divorce. She argues that, in discovery, Mr. Henriquez never specifically requested attorney's fees bills or related documents. During her deposition, she argues, she "was candid about not paying fees to her attorney, but *at no time* stated that she waived her claim for fees as pled in her Complaint for Absolute Divorce."

We begin first by dispensing with Mr. Henriquez's assertion that Ms. Henriquez "affirmatively denied" that she was asserting a claim for attorney's fees. To be sure, Ms. Henriquez and her attorney stated at Ms. Henriquez's deposition that the House of Ruth represented Ms. Henriquez without charging her a fixed or hourly legal fee. This did not constitute a waiver of a claim for attorney's fees, however, because, as indicated *supra*, and as argued at trial, attorney's fees may be awarded to a non-profit legal services organization even in the absence of a fee agreement. Mr. Henriquez never specifically asked Ms. Henriquez if she waived her claim for attorney's fees, and Ms. Henriquez never indicated that she was waiving this claim. We find the argument that there

---

11. Md. Rule 2–401(e) provides that, "[e]xcept in the case of a deposition, a party who has responded to a request or order for discovery and who obtains further material information before trial shall supplement the response promptly."

was an affirmative waiver of the claim for attorney's fees to be without merit.

We also are not persuaded by Mr. Henriquez's claim that the court should have denied Ms. Henriquez's request for attorney's fees based on her failure to produce before trial the document itemizing the requested fees. Although Mr. Henriquez asked, in interrogatories and in a request for production of documents, for any documents Ms. Henriquez intended to produce at trial, there was no specific request for information regarding attorney's fees.

. In any event, any sanction for a violation of the discovery rules is within the court's discretion. *Rodriguez v. Clarke,* 400 Md. 39, 57, 926 A.2d 736 (2007) (appellate court reviews the trial court's "determination of discovery sanctions under an abuse of discretion standard"); *Klein v. Weiss,* 284 Md. 36, 56, 395 A.2d 126 (1978) (court "is vested with a large measure of discretion in applying sanctions for failure to adhere to the discovery rules"). In exercising its discretion, the court should consider the following:

> "whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering or opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance."

*Storetrax.com, Inc. v. Gurland,* 168 Md.App. 50, 89, 895 A.2d 355 (2006) (quoting *Taliaferro v. State,* 295 Md. 376, 391, 456 A.2d 29 (1983)), *aff'd on other grounds,* 397 Md. 37, 915 A.2d 991 (2007).

The court here made a lengthy inquiry into the factual background regarding Ms. Henriquez's failure to submit the bill at an earlier date. The court listened to Ms. Henriquez's argument that she made a claim for attorney's fees in her Complaint, that she did not waive her claim in her deposition, and that Mr. Henriquez never specifically requested information or documents regarding attorney's fees claimed.

Moreover, the introduction of the document itemizing the fees requested did not prejudice Mr. Henriquez because the court did not rely on it in awarding attorney's fees to Ms. Henriquez. Rather, the court disregarded the $11,668 in itemized fees, and, instead, looked to the attorney's fees incurred by Mr. Henriquez. The court stated: "Mr. Henriquez has made a payment of $5,000 to [his attorney]. I think that represents an exceptionally reasonable amount and I make an award of a similar amount to, for counsel fees." [12]

We find no abuse of discretion in this case. There was no error in awarding Ms. Henriquez attorney's fees and ordering Mr. Henriquez to pay $5,000 to the House of Ruth.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

12. As indicated, there is no claim here that the fees awarded were not reasonable.