# EWELL *v.* STATE
[No. 159, October Term, 1954.]

 

*Decided May 17, 1955.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Morton E. Rome,* with whom were *Rome & Rome* on
the brief, for appellant.

*Stedman Prescott, Jr., Assistant Attorney General,*
with whom were *C. Ferdinand Sybert, Attorney General,
Anselm Sodaro, State's Attorney for Baltimore City,* and
*James F. Price, Assistant State's Attorney* on the brief,
for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant was convicted of wilfully neglecting to
provide for the support and maintenance of his wife by
the Criminal Court of Baltimore, sitting without a jury,
and sentenced to imprisonment for eighteen months.
Sentence was suspended and the appellant released on
probation on condition that he pay $25.00 a week for
the support of his wife. He says the judgment should
be reversed because (1) his wife has $10,000 in cash,
most of which she accumulated during their married
life, while he is unemployed and without funds; (2)

six months before the prosecution, they had entered into a separation agreement providing for her support if she obtained an absolute divorce, which she had repudiated almost immediately; (3) there was not sufficient evidence of wilfulness.

The appellant and his wife had been married some twenty-eight years when their marital difficulties arose. The husband, who served in the Navy during the second World War and emerged as a commander, had held responsible and well-paying positions before and after his service. His last regular employment, as an economist for the Government in Washington, ended in April, 1953 and since then he has paid her nothing. Several years before that the wife had sued for partial divorce but had subsequently dismissed the proceedings. Two months later, she again filed for divorce. Attempts were made to reach a settlement of the marital differences and on March 12, 1954, the separation agreement was executed and the second suit dismissed. Then, the wife became dissatisfied with the agreement and went to the State's Attorney's office to compel the husband to support her. The State's Attorney, upon being shown the separation agreement, filed a *nolle prosequi*. Later, at the insistence of the wife, a second information was filed by the State's Attorney, alleging non-support of his wife by the appellant. At the trial the wife testified that she had some $2,000 in cash, perhaps a little more, as well as furniture, and the appellant testified that he had sought, but was unable to obtain, work, that he had less than $100 to his name and was living on borrowed funds. The court found him guilty of non-support and the Supreme Bench refused to grant a new trial. After this, the matter was referred to the probation department for investigation of the financial resources of both husband and wife. This showed the wife's actual cash assets to be $10,000. The appellant thereupon filed a "Motion to Strike Out Verdict or, in the Alternative, Motion for a New Trial." Relief was sought because of the false testimony which the wife gave at the trial. Testimony was taken on the motion

and the wife admitted that she did have in excess of
$10,000, although she said that she was morally obli-
gated to pay it to friends who had taken care of her,
when her husband would not, at a time when she was ill.
The appellant complained that he was prevented from
cross-examining the wife at the hearing on the motion
about the individuals to whom she felt morally obligated
and about her allegations in the two bills for partial
divorce, in which she had said she was without means
to support herself or to pay court costs. He urges,
too, that the court should have received the proffered
testimony of a former assistant state's attorney for Bal-
timore City and a present state's attorney, each of whom
had acted as chief of the Domestic Relations Department
of the state's attorney's office, that it was a clear and
unbroken policy of that office not to bring a non-support
prosecution if there was a pending equity matter be-
tween the couple or if the wife had even a small amount
of money.

At common law failure by the husband to support his
wife was not a crime. The husband had an obligation
of support, which was to furnish necessaries to the
wife. If he did not, her remedy was to purchase the
necessaries on his credit. The meaning of the term nec-
essaries was relative, elastic and dependent upon cir-
cumstances, that is, the means and station in life of
the couple. The liability of a husband was not limited
merely to articles necessary to sustain life or to preserve
decency but extended to things which would be desirable
and suitable in view of the rank, fortune, earning ca-
pacity of the husband and the mode of living of the
couple. The liability of the husband to furnish neces-
saires did not depend upon whether the wife had means
of her own and was able to pay for them herself, at
least in Maryland. *McFerren v. Goldsmith-Stern Co.*,
137 Md. 573. There, Judge Offutt said for the Court:
"If then the husband's duty to supply his wife with
necessities depends upon the marital relation and the
obligations incident thereto, it cannot be said to depend

upon, nor be affected by her ability to procure such necessities from her separate estate, and such seems to ·be the general view." The Court adopted this language as an accurate statement of the law: " 'The right of a wife to support from her husband and his duty to support her do not depend upon the inadequacy of her means, but upon the marriage relation. Her implied authority to pledge his credit springs from his obligation, as husband, to provide for her, and not from the fact that otherwise she will be destitute". The Court continued: "And in our opinion the principles so stated are not only established by our decisions, but are entirely consonant with reason and the best considered authority elsewhere."

Statutes have been passed in almost all of the States which have made failure of the husband to perform his duty of support, unless adequately excused, a crime. The statutes fall generally into two classes, those which require the wife to be in destitute and necessitous circumstances before the husband's failure to support her is a crime, and those which merely state, as does the Maryland statute, Code, 1951, Art. 27, Sec. 96, that it is a crime for one without just cause to "* * * wilfully neglect to provide for the support and maintenance of his wife * * *." Even in the statutes which require destitution as a prerequisite, the courts have refused generally to interpret the statutes literally. They have carried over into the testing of the criminal offense the same standards applied at common law to necessaries and what constituted them.

In *State v. Waller* (Kan.), 136 P. 215, the deserted wife lived comfortably with her parents. She had saved some money and had won a piano in a contest. Although the statute required the wife to be in destitute circumstances, the Court held that term to be relative and said that the criterion was not mere physical necessity but rather, social and moral propriety, having regard to the fitness of things. It went on to say: "* * * property which would make a person in one condition of life

wealthy would be inadequate to supply the legitimate wants of one differently situated."

In *Ulrich v. State* (Court of General Sessions of Delaware), 59 A. 2d 460, the parties, upon their separation, sold their home and divided the proceeds. The wife received all of the furniture, $2,200 in cash, and had $500 of her own. The Delaware statute required the wife to be in destitute and necessitous circumstances. The Court nevertheless upheld the conviction of the husband. It said: "Depending on their relative economic situations some would regard $2700 as a small fortune, others a substantial amount and, still others, inconsequential."

The Courts in States in which the wife is not required by the statute to be destitute, have applied the same relative tests. In *Poole v. People* (Col.), 52 P. 1025, the Court said: "The statute * * * does not change the law as to the civil liability of the husband to furnish his wife reasonable support. It provides a penalty in case he fails to do so, unless excused by physical incapacity or other good cause. He is not relieved from furnishing such support on account of the financial means of his wife * * *." See also *Shaw v. State* (Ariz.), 229 P. 395.

In *Commonwealth ex rel. Fedor v. Fedor*, 157 Pa. Super. 305, 43 A. 2d 363, a deserted wife kept house for her brothers. She shortly was to receive a moderate sum on the settlement of her mother's estate and had savings of her own. The Court held this had no bearing on her husband's obligation to support her. *Commonwealth ex rel. Wieczorkowski v. Wieczorkowski* (Pa. Super.), 38 A. 2d 347, agrees.

The appellant argues that the purpose of the statute is to prevent a wife from becoming a public charge and that here there is no danger of this. While this theory has found support by some courts, it has not generally been accepted under statutes similar to that of Maryland. In *State v. Moran* (Conn.), 121 A. 277, the contention was made and the Court agreed that, undoubtedly, this was one of the purposes of the Legislature and added: "* * * that result was not the limit of

its purpose nor its chief object. The statute it enacted contains no provision that by reason of the neglect or refusal to support his wife or child either of them may be in danger of being a burden upon the public. \* \* \* The higher and more important object of the Legislature of this state was to provide directly for unsupported wives and children, and to punish this offense against them, and by fear of punishment to prevent the committing of such offenses." See also *Commonwealth v. Acker* (Mass.), 83 N. E. 312. In *State v. James,* 203 Md. 113, 122, this Court indicated that the purposes of the Maryland statute were those set forth by the Connecticut Court by adopting the latter part of the language just quoted.

What we have said disposes of several of the appellant's contentions. That he was not permitted to cross-examine his wife as to her undoubtedly false statements in regard to her financial means, did not harm him. It would have made no difference who the individuals were to whom the wife said she felt morally obligated or whether there were no such individuals at all. It was demonstrated to the court that the wife had, on various occasions, denied the possession of any financial resources and had grossly underestimated those resources under oath at the trial. As we see it, the possession of the money which she denied having did not bar the right of the State to convict the appellant for the ultimate benefit of the wife, and, so, the appellant was not prejudiced.

The offer to show that the practice of the state's attorney's office was not to institute prosecution for non-support, where there was an equity proceeding pending between the parties or where the wife had funds of her own, was properly rejected by the trial court. If the offer was on the theory that the practice had put a gloss on the statute which made it mean that the wife had to be in destitute circumstances as a prerequisite to the guilt of the husband, it has been seen that even where this is a specific requirement of the

statute, the question of destitution usually is relative. The Maryland act is plain and unambiguous. It is well established that where the language of a statute is clear and explicit and susceptible of a sensible construction, it cannot be controlled by extraneous considerations or limited or nullified by custom or administrative practice. *Atkinson v. Sapperstein,* 191 Md. 301, 312; *Bouse v. Hutzler,* 180 Md. 682; *Graham v. Joyce,* 151 Md. 298; *Department of Tidewater Fisheries v. Sollers,* 201 Md. 603. Moreover, the proffer was to show the custom in Baltimore City only. The statute is state-wide in its operation and effect. To affect interpretation of a statute, administrative practice must be universal, and practice or custom in one part of a State will not be considered in determining the meaning of a statute which is state-wide in effect. In *Brown v. State,* 177 Md. 321, 332, it was said: "The Court finds the offered evidence of previous failure of the police of Baltimore to enforce this law against the ice cream vendors properly excluded. The law is one for the whole state, and for a method of trading which exists throughout the state, and the practice of the Baltimore police would not be sufficient to fix its applicability. The practice may have ,been due to a local misconception, * * *." *Atkinson v. Sapperstein, supra.* See 2 *Lewis' Sutherland Statutory Construction,* 2nd Ed., Sec. 473, p. 888; *State ex rel. Kuehl v. City of Seattle* (Wash.), 79 P. 2d 974, 977. If this were not the rule there might be as many interpretations of a statute as there are counties in a state.

The state's attorney is given broad discretion as to the cases he will prosecute. As was said in *Brack v. Wells,* 184 Md. 86, 90: "He must be trusted with broad official discretion to institute and prosecute criminal causes, subject generally to judicial control. The office is one not purely ministerial, but involves the exercise of learning and discretion." We think that the practice of the state's attorney of Baltimore in not prosecuting cases of non-support in which the wife has funds, if such practice had been proven, would amount to no

more than the exercise of his discretion on a general basis and could not be considered as an administrative practice intended to, or having the effect of, interpreting the statute. As was pointed out in the *Brack* case, if the state's attorney does not act, the prosecuting witness may seek directly the aid of the Grand Jury.

The separation agreement was not a bar to the criminal prosecution by the State. If we assume that the agreement could validly be conditioned on divorce—see *Frank v. Frank*, 203 Md. 361, and cf. *Cronin v. Hebditch*, 195 Md. 607—nevertheless, there could be no binding contract to obtain a divorce and the husband could not effectively tell his wife he would meet his obligation of support only if she divorced him. *Zouck v. Zouck*, 204 Md. 285, 293. If she does not wish to do so, the wife need not sue for divorce or lose her right to support. *People v. Romaine*, 109 N. Y. S. 1100. The agreement here recognized the distinction. It made all its provisions dependent on the parties getting a divorce but it did not purport to obligate the wife to obtain one. It was, and has remained, wholly executory. To the argument that it waived the right to support until January, 1955, when minimum weekly payments were scheduled to begin, there are several answers. This provision, like all its others, was effective only if there was a divorce. The obligation was to pay a lump sum of $5,150 to the wife and $500 to her counsel as soon as the divorce went through. There was no waiver of support in the terms of the agreement if no divorce was obtained.

This is not a case where a wife is receiving stipulated sums under an agreement which is in effect. Payments so made might, and generally would, meet the husband's obligation and negate wilful neglect. *McFerren v. Goldsmith-Stern Co., supra.* It is a case where the husband agreed to meet his obligation of support only if the wife divorced him. That obligation cannot be so qualified.

Courts have held (we cite the cases as illustrative only, it not being necessary to so hold in this case) that

a separate maintenance or alimony decree does not bar prosecution by the State for non-support when the alimony awarded the wife in the civil suit is not being paid, despite the remedies of contempt proceedings or suit on the decree. In *Ex-parte Filtzer* (Nev.), 100 P. 2d 942, the Court said: "The people's right to enforce the penal laws of the state is absolute. It is not dependent upon what remedy may be open to the wife in a civil action. We hold that the decree of separate maintenance is no bar to the criminal prosecution for non-support." The same decision was reached in *Commonwealth v. Booth* (Mass.), 165 N. E. 29, opinion by Chief Justice Rugg, where it was held that a decree in an Ohio court, making provision for the support of the wife, was no bar to the Massachusetts indictment for non-support. The Court said: "The defendant was refusing to comply with that decree. The wife was in need. The commonwealth had a right to enforce its laws. * * * Civil actions between the parties cannot bar the commonwealth from protecting itself." The Massachusetts statute spelled out what the Court held, but it would seem that the Court deemed the statute to be declaratory. See also *King v. State* (Ga.), 77 S. E. 651; and cf. *Dougherty v. Dougherty*, 189 Md. 316, 321.

We turn then to the decisive question in the case— whether the husband's failure to support his wife was wilful. The court, sitting without a jury, found that it was. The testimony showed that the husband had paid nothing since November, 1953. He testified that this was on advice of counsel, and, in any event, that he could not have paid more than $20.00 a month because of lack of funds. When he was asked by the court whether he had not refused to give his wife support because she would not grant him a divorce, he made denial which could have been found to be less than categorical. There was testimony on the part of the wife that she had a message from her husband's lawyer that she would not receive a single cent until she obtained a divorce. The separation agreement, as has been noted, was con-

ditioned upon the obtaining of a divorce. The husband testified that the funds to pay the lump sum to the wife and the counsel fee were to be lent him by a friend. He testified also that he had made constant efforts to obtain employment and had been unable to find any. His testimony indicated that the employments which he sought were of a kind, and at a remuneration, comparable to those he had held in the past. At the conclusion of the motion for a new trial, the court indicated its recollection that the support of the wife depended upon the divorce as far as the husband was concerned. It was brought out that he rented an apartment which he did not occupy and that he had continued his membership in a club during the time he was paying his wife nothing. His own testimony indicated that he could have paid her $20.00 a month during that period.

To be guilty under the statute, the husband must wilfully fail to provide for his wife without just cause. The term "wilfully" in criminal statutes has been said "* * * to characterize an act done with deliberate intention for which there is no reasonable excuse * * *." *Rosenberg v. State,* 164 Md. 473, 476. If the conviction is to be sustained, there must have been testimony from which the trier of the facts could have determined that the husband intentionally refused to support his wife, although he had the capacity to do so. The cases have held that wilful failure to support presupposes the existence of, or the ability to obtain, the means of support by the husband. He must have the means or the capacity to obtain them. *Stedman v. State* (Fla.), 86 S. 428; *Commonwealth ex rel. Wieczorkowski v. Wieczorkowski* (Pa. Super.), 38 A. 2d 347, *supra.* In the latter case, the Court said that regardless of the small amount actually being earned by the husband, if he has earning power, he must support his wife. It added: "* * * the court may consider the earning power of the husband and is not restricted to his actual earnings."

In *People v. Winn* (Dist. Ct. of App., Calif.), 210 P. 2d 75, the husband had been sentenced for failure to support, and upon his release, continued his failure. He testified that in one year he had earned only about $600.00, all of which was needed for his own support, and that he was unable to work because of a strained back and bad nerves. The Court found that there was a fair inference that he could have earned more than he claimed. The Court said: "The jury saw and observed him and was in a better position than is this court to judge as to the extent of his claimed disability. * * * The evidence, with the reasonable inference therefrom, supports the implied finding of the jury that the defendant either had the ability to provide something for his wife's support or was able to earn the means therefor. It rather clearly appears that the defendant's failure to contribute anything toward his wife's support was due to his own attitude, and to his mistaken belief that his former conviction relieved him of any further responsibility in that regard, rather than to any disability on his part within the meaning of this statute." See also *Zitlow v. State* (Wis.), 252 N. W. 358. The Wisconsin Court pointed out that where an individual has the physical and mental powers to acquire means of support, he comes within the intent of the law. It concluded that the verdict must be sustained if, upon any reasonable view of the evidence, an inference of wilful nonsupport may be drawn. Cf. *Painter v. Commonwealth* (Sup. Ct. App. of Va.), 124 S. E. 431, where the husband was found guilty of nonsupport by a jury and the Court reversed because it was obvious from the evidence that the mental power and the will of the husband had long been destroyed by drugs and disease.

On appeal in a criminal case where the trial was by the court, sitting without a jury, this Court, under Rule 7 of the Criminal Rules of Practice and Procedure, reviews the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction, and the verdict is not to be set aside on the evidence

"unless clearly erroneous". The rule directs us to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. The evidence in this case shows that the husband had been successful all of his life in earning relatively large sums of money. There is no showing that his health would not permit him to work and the trial court, taking into account his experience and intelligence, could not unreasonably have found that employment, which would afford reasonable compensation to him, was available if he earnestly desired it. Too, we cannot say that the trial court was clearly erroneous in its conclusion that the appellant's failure to support his wife was because he neither desired nor intended to do so as long as she refused to divorce him. These two findings would sustain the conclusion that his conduct was wilful within the meaning of the statute.

*Judgment affirmed, wtih costs.*