992 A.2d 446

Jose HENRIQUEZ

v.

Ana HENRIQUEZ.

No. 81, Sept. Term, 2009.

Court of Appeals of Maryland.

April 13, 2010.

⚷603

Luiz R.S. Simmons (Auerbach & Simmons, Silver Spring, MD), on brief, for Petitioner

Deena Hausner (Ashley R. Sikora of House of Ruth Maryland Domestic Violence Legal Clinic, Baltimore, MD), on brief, for Respondent.

Brief of Public Justice Center, Maryland Network against Domestic Violence, Legal Aid Bureau, Women's Law Center, Mid-Shore Council on Family Violence, Maryland Coalition Against Assault, Heartley House, and Maryland Volunteer Lawyers Service as Amici Curiae for Respondent:

Monisha Cherayil, Esquire, Murnaghan Appellate Advocacy Fellow, Baltimore, MD.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, Judge.

We are asked to consider whether a court award of attorneys' fees in a divorce and custody proceeding between Jose Henriquez, Petitioner, and Ana Henriquez, Respondent, the prevailing party, to a non-profit organization that provided Mrs. Henriquez with pro bono legal representation, was appropriate under Section 12–103 of the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.).[1]

---

1. Statutory references to Section 12–103 throughout are to the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.). Section 12–103 provides:

After a trial on issues of custody, visitation, and child support, the Circuit Court for Montgomery County ordered, among other things, that Mr. Henriquez pay $5,000 in attorneys' fees to the House of Ruth Domestic Violence Legal Clinic, a non-profit organization that represented Mrs. Henriquez on a pro bono basis. The Court of Special Appeals affirmed the award of attorneys' fees in a reported opinion, *Henriquez v. Henriquez*, 185 Md.App. 465, 971 A.2d 345 (2009), and we granted certiorari, *Henriquez v. Henriquez*, 410 Md. 165, 978 A.2d 245 (2009), to address the following question,[2] which we have compressed and rephrased for clarity:

(a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; . . . .

\* \* \*

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

2. The Petition for Certiorari included three related questions:

1. Whether the Court of Special Appeals, under the guise of interpretation, has reinvented 12–103 of the Family Law Article, to require payment of attorney's fees by one party to the *pro bono* attorney of the other party, where the latter party has not *incurred* and is not *indebted* to her *pro bono* attorney, for attorney's fees.

2. Whether the opinion of the panel of the Court of Special Appeals flatly contravenes the holdings of the Court of Appeals in <u>Rubin v. Rubin</u>, 233 Md. 118, 195 A.2d 696 (1963) and the Court of Special Appeals in <u>Corapcioglu v. Roosevelt</u>, 170 Md.App. 572, 907 A.2d 885 (2006), that an award of attorney's fees under FL 12–103 is *compensatory* in nature and based upon the predicate that attorney's fees have been *incurred* by the dependant party.

3. Whether the opinion of the panel of the Court of Special Appeals substitutes it's [sic] conviction about what constitutes good public policy instead of adhering to the precedents of Maryland Appellate Courts and leaving to the Maryland General Assembly the question of whether FL 12–103 should be amended to require the payment of attorney's fees from one party to the pro bono attorney of the dependant party, where the dependant party has not *incurred* and is not *indebted* to the pro bono attorney for legal fees.

Whether an award of counsel fees directly to a non-profit legal services organization that represented a prevailing party, on a pro bono basis originally, in a child custody matter, is appropriate pursuant to Section 12–103 of the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.)?

We shall hold that the plain meaning of Section 12–103 permits an award of attorneys' fees, consistent with consideration of the statutory factors, when the prevailing party receives pro bono legal representation from a non-profit legal services organization, and that the award may be made directly to the legal services organization.

**Background**

Ana and Jose Henriquez were married in El Salvador on April 18, 1998. They had two children during the marriage, Ana, born in 1998, and Jessica, born in 2000.[3] In December of 2005, Mrs. Henriquez filed a Complaint for Absolute Divorce in the Circuit Court for Montgomery County, requesting "sole legal and physical custody" of the children, "temporary and permanent child support," as well as "reasonable counsel fees and costs."

Judge Durke G. Thompson bifurcated the proceedings, considering issues of custody, visitation, and child support on January 8 and 9, 2007, first, prior to exploring the grounds for divorce and property disposition matters. During the custody, visitation, and child support phase of the trial, counsel for Mrs. Henriquez introduced an itemized bill entitled "Attorney's Fees for Custody, Visitation and Support Issues Only," documenting legal work on her behalf undertaken by the House of Ruth amounting to 58.34 hours, at $200 per hour, for a total of $11,668. Counsel for Mr. Henriquez objected to the introduction of the bill for attorneys' fees, because the House of Ruth agreed to represent Mrs. Henriquez on a pro bono basis.

At the conclusion of the custody, child support, and visitation phase of the trial, Judge Thompson awarded Mrs. Henri-

---

(Emphasis and underlining in original).

**3.** Mrs. Henriquez had another child born in 1994.

quez sole physical custody of the children and ordered Mr. Henriquez to pay child support. Judge Thompson also awarded attorneys' fees in the amount of $5,000 to the House of Ruth for legal work on Mrs. Henriquez's behalf regarding custody, visitation, and support issues, explaining his decision as follows:

> The Court also believes that there should be some award of fees for representation given that essentially Mrs. Henriquez is wholly dependent and went to a community services organization for her representation. She's virtually penniless as far as I can tell. Mr. Henriquez makes what he makes. Any payment to counsel obviously goes out of the family pocket and into, into counsel's pocket. Mr. Henriquez has made a payment of $5,000 to [his attorney]. I think that represents an exceptionally reasonable amount and I make an award of a similar amount to, for counsel fees.
>
> \* \* \*
>
> The award of fees to the plaintiff are for the purposes of costs and to whatever extent attorneys' fees have been expended.

which was later reduced to an order stating,

> ORDERED, that the Defendant shall pay to the Plaintiff's counsel, the House of Ruth Domestic Violence Legal Clinic, the sum of Five Thousand Dollars ($5,000.00) for attorney's fees
>
> . . . .

Mr. Henriquez noted a timely appeal to the Court of Special Appeals, which affirmed in a reported opinion, *Henriquez v. Henriquez*, 185 Md.App. 465, 478–79, 971 A.2d 345, 353–54 (2009), holding that Section 12–103 contains "no *per se* bar to awarding attorney's fees to a party who is represented by a non-profit organization that provides the party with free legal representation," relying in part on a finding that a majority of states have held that providers of pro bono legal representation are eligible to receive fee awards in domestic relations matters.

### Introduction

We are asked to interpret a fee shifting statute in the family law arena, to resolve the question of whether attorneys' fees to a prevailing party in a child custody and support proceeding can be ordered to be paid directly to a non-profit, legal services organization that provides pro bono representation to the party.

■■■■ We generally adhere to the "American rule," [4] in which each party is responsible for its own legal fees, regardless of who wins in the litigation. *See Friolo v. Frankel,* 403 Md. 443, 456, 942 A.2d 1242, 1250 (2008), citing *Montgomery v. E. Corr. Inst.,* 377 Md. 615, 637, 835 A.2d 169, 183 (2003); *see also Hess Constr. Co. v. Bd. of Educ. of Prince George's County,* 341 Md. 155, 159, 669 A.2d 1352, 1354 (1996). Fee shifting, an exception to the American rule, whereby a court orders payment of the prevailing party's attorneys' fees by the losing side, may be accomplished by an express agreement or by statute. *Friolo,* 403 Md. at 456, 942 A.2d at 1250; *see also Bausch & Lomb Inc. v. Utica Mut. Ins. Co.,* 355 Md. 566, 592, 735 A.2d 1081, 1095 (1999) ("Maryland law has never recognized fee shifting ... absent contractual provision, statute, or rule."). *See also Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 445 & n. 3, 952 A.2d 275, 281 & n. 3 (2008) (describing additional bases for fee shifting).

In terms of pro bono legal service, we have emphasized the importance of such activities by the profession and have attempted to increase the availability of free or reduced fees for legal representation of indigent individuals throughout our State.[5] Rule 6.1 of the Maryland Rules of Professional Con-

---

**4.** For a discussion of the genesis of the American rule, as well as exceptions, see Matthew D. Klaiber, Comment, *A Uniform Fee–Setting System for Calculating Court–Awarded Attorneys' Fees: Combining* Ex Ante *Rates with a Multifactor Lodestar Method and a Performance–Based Mathematical Model,* 66 Md. L.Rev. 228, 233–34 (2006).

**5.** The Preamble to the Maryland Rules of Professional Conduct emphasizes the importance of pro bono service, stating:

duct, in which an aspirational goal of fifty hours of annual pro bono service by all attorneys is encouraged,[6] as well as Rule 16–903,[7] requiring mandatory reporting of pro bono hours, fortified by the adoption recently of the Ideals of Professional-

---

A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. Therefore, all lawyers should devote professional time and resources and use civic influence to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.

6.  Rule 6.1 of the Maryland Rules of Professional Conduct was amended on April 9, 2002, effective July 1, 2002, adding provisions concerning an aspirational goal for pro bono publico legal service and states in pertinent part:

(a) **Professional Responsibility.** A lawyer has a professional responsibility to render pro bono publico legal service.

(b) **Discharge of Professional Responsibility.** A lawyer in the full-time practice of law should aspire to render at least 50 hours per year of pro bono publico legal service, and a lawyer in part-time practice should aspire to render at least a pro rata number of hours.

(1) Unless a lawyer is prohibited by law from rendering the legal services described below, a substantial portion of the applicable hours should be devoted to rendering legal service, without fee or expectation of fee, or at a substantially reduced fee, to:

(A) people of limited means;

(B) charitable, religious, civic, community, governmental or educational organizations in matters designed primarily to address the needs of people of limited means;

(C) individuals, groups, or organizations seeking to secure or protect civil rights, civil liberties, or public rights; or

(D) charitable, religious, civic, community, governmental, or educational organizations in matters in furtherance of their organizational purposes when the payment of the standard legal fees would significantly deplete the organization's economic resources or would otherwise be inappropriate.

7.  Rule 16–903, governing reporting pro bono legal service, states in pertinent part:

(a) **Required as a condition of practice.** As a condition precedent to the practice of law, each lawyer authorized to practice law in Maryland shall file annually with the Administrative Office of the Courts a Pro Bono Legal Service Report on a form approved by the Court of Appeals. The form shall not require the identification of pro bono clients.

ism,[8] reflect this commitment. Approximately one million Marylanders satisfy eligibility for pro bono legal services, yet "[b]ecause of inadequate resources, legal services providers must reject thousands of compelling cases," especially in the area of family law. *See* Standing Committee of the Court of Appeals on Pro Bono Legal Service, *State Action Plan and Report,* at 5, 11 (2006) ("Family law cases consistently overwhelm the legal services delivery system and pro bono programs. Contested cases are the most difficult to place because they are time consuming and the pool of experienced family law practitioners is relatively small."), *available at* http://www.mdcourts.gov/probono/pdfs/stateactionplan12-18-06.pdf (last visited Apr. 9, 2010).

Within this framework, we consider the award of $5,000 to the House of Ruth,[9] who represented Mrs. Henriquez on a pro bono basis during the child custody and support proceeding.

**Discussion**

■ Our focus in the present case is the language of Section 12–103, which states in relevant part:

(a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; . . . .

\* \* \*

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

---

**8.** The Ideals of Professionalism, approved by this Court on March 8, 2010, further emphasizes a lawyer's obligation to furnish pro bono legal services, stating:
   *A Calling to Service*
   *A lawyer should:* . . . (8) accept responsibility for ensuring that justice is available to every person and not just those with financial means.

**9.** Mr. Henriquez does not challenge the reasonableness of the fee.

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

Mr. Henriquez argues that the award of attorneys' fees was improper as a matter of law, contending that Section 12–103 authorizes an award of attorneys' fees only when a party actually incurs expenses for legal representation, defining "attorney's fees" as "the *charge to a client for services performed for the client,* such as an hourly fee, a flat fee, or a contingent fee," quoting Black's Law Dictionary 148 (9th ed. 2009) (emphasis in original). He emphasizes that Mrs. Henriquez did not actually incur any counsel fees.

Mrs. Henriquez counters that the word "incurred" does not even appear anywhere in the language of Section 12–103 and submits that "[a]ttorney's fees are simply monies due to an attorney for legal services rendered," and that nothing in the mandatory factors set forth in Section 12–103 "requires a court to consider the status of the legal services rendered or whether a litigant actually owes fees."

In interpreting this statutory language in issue, we recognize that:

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.

In construing the plain language, "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." Statutory text " 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to

harmonize provisions dealing with the same subject so that each may be given effect.

If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.' "

*Bowen v. City of Annapolis*, 402 Md. 587, 613–14, 937 A.2d 242, 257–58 (2007), quoting *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005).

The plain meaning of Section 12–103 permits the award of attorneys' fees in the present case, because "counsel fees" are limited only to that which "are just and proper under all the circumstances." The only other statutory mandate that restricts a court's award of attorneys' fees is contained in Section 12–103(b), which enumerates considerations a court must weigh before awarding fees, to include (1) the financial status of each party, (2) the needs of each party, and (3) whether there was substantial justification for bringing or defending the proceeding. *See Petrini v. Petrini*, 336 Md. 453, 468, 648 A.2d 1016, 1022 (1994) ("Consideration of the statutory criteria is mandatory in making the award and failure to do so constitutes legal error."); *see also Carroll County v. Edelmann*, 320 Md. 150, 177, 577 A.2d 14, 27 (1990). There is no language restricting an award to fee paying clients; in fact the considerations of financial status and need belie the necessity that an attorney must have been remunerated.[10]

---

10. Mr. Henriquez argues that payment of attorneys' fees should be analogized to a husband's obligation at common law to provide his wife with necessaries, referring us to *Sterling v. Sterling*, 145 Md. 631, 643–44, 125 A. 809, 813 (1924), *Hood v. Hood*, 138 Md. 355, 360, 113 A. 895, 897 (1921), *Chappell v. Chappell*, 86 Md. 532, 536, 39 A. 984, 986 (1898), as well as early common law cases from other jurisdictions.

Mr. Henriquez's interpretation of the statute, however, would require that we insert, after the statutory phrase "costs and counsel fees," the word "incurred." This Court, however, has repeatedly stated that "[w]e will not ... judicially insert language [into a statute] to impose exceptions, limitations, or restrictions not set forth by the legislature." *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 95, 896 A.2d 304, 316 (2006) (citations and internal quotation marks omitted) (alterations in original); *see also Nesbit v. Government Employees Ins. Co.*, 382 Md. 65, 75, 854 A.2d 879, 885 (2004) ("We will not divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature." (citations and internal quotation marks omitted)); *Melton v. State*, 379 Md. 471, 477, 842 A.2d 743, 746 (2004) ("[W]e will not add or delete words from the statute."). "Incurred" is just not included in the statute.

---

Pursuant to the necessaries doctrine, "the husband had a legal duty to supply his wife with necessaries suitable to their station in life," *Condore v. Prince George's County*, 289 Md. 516, 520–21, 425 A.2d 1011, 1013 (1981), citing *Ewell v. State*, 207 Md. 288, 114 A.2d 66 (1955); *Coastal Tank Lines, Inc. v. Canoles*, 207 Md. 37, 113 A.2d 82 (1955); *Stonesifer v. Shriver*, 100 Md. 24, 59 A. 139 (1904), often including payment of "money to carry on her [divorce] suit." *Hood*, 138 Md. at 360, 113 A. at 897. In so arguing, Mr. Henriquez appears to be saying that fee shifting in the context of the wife prevailing in a lawsuit was solely predicated on the necessaries doctrine. That is not the case, first, because Section 12–103, as well as its predecessor, Section 5A of Article 16, Maryland Code (1957, 1966 Repl.Vol., 1967 Supp.), use gender neutral language, and second, because fee shifting statutes in other arenas were enacted prior to Section 5A of Article 16, so, obviously, the Legislature had other bases to shift fees. At least two fee shifting statutes predated the enactment of Section 5A of Article 16, Maryland Code (1957, 1966 Repl.Vol., 1967 Supp.). *See Shulton v. Rubin*, 239 Md. 669, 686–87, 212 A.2d 476, 486 (1965) (interpreting The Maryland Securities Act, Section 34(a)(2) of Article 32A, Maryland Code (1957, 1964 Supp.), which enabled a buyer of a security who was misled by the seller to recover "reasonable attorney's fees"); *see also U.S. Elec. Power and Light Co. v. State*, 79 Md. 63, 72, 28 A. 768, 769 (1894) (considering an award of attorneys' fees pursuant to Chapter 559 of the Act of 1890, which permitted the State to recover a reasonable attorneys' fee when a litigant had unsuccessfully attempted to "defeat the collection of a just [tax] debt").

Mr. Henriquez, nevertheless, emphasizes that "attorney's fee" has been defined as "the *charge to a client for services performed for the client,*" referring to Black's Law Dictionary 148 (9th ed. 2009) (emphasis in original). We have previously indicated, however, that a "dictionary definition is not dispositive of the meaning of a statutory term," *Comptroller v. Science Applications Int'l Corp.,* 405 Md. 185, 202, 950 A.2d 766, 776 (2008), citing *Ishola v. State,* 404 Md. 155, 161, 945 A.2d 1273, 1276 (2008), because "dictionaries provide possible meanings, not dispositive resolutions." *Morris v. Prince George's County,* 319 Md. 597, 606, 573 A.2d 1346, 1350 (1990), quoting Comment, *Jurisprudence by Webster's: The Role of the Dictionary in Legal Thought,* 39 Mercer L.Rev. 961, 963 (1988). In this regard, as noted at oral argument, other dictionaries have no such mention of a "charge to a client," such as Ballentine's Law Dictionary, which defines "attorney's fee" as "[a]n allowance made by the court as costs in addition to the ordinary statutory costs." Ballentine's Law Dictionary 109 (3rd ed. 1969).

He also refers us to the case of *Patronelli v. Patronelli,* 175 N.C.App. 320, 623 S.E.2d 322 (2006), in which the North Carolina intermediate appellate court relied upon this definition to deny a wife attorneys' fees in a domestic relations matter, in which she was represented on a pro bono basis. In so doing, the court opined, "counsel fees cannot, by definition, be implicated in the present case where the dependent spouse never incurred counsel expenses." *Id.* at 324.

Mr. Henriquez, however, fails to note that in subsequent appellate history, the North Carolina Supreme Court rejected the reasoning of its intermediate appellate court, relying instead on the plain meaning of the fee shifting statute in issue, which stated:

> At any time that a dependent spouse would be entitled to alimony ... or postseparation support ... the court may, upon application of such spouse, enter an order for reasonable counsel fees *for the benefit of such spouse,* to be paid and secured by the supporting spouse in the same manner as alimony.

*Patronelli v. Patronelli,* 360 N.C. 628, 636 S.E.2d 559, 560 (2006) (emphasis in original). The court determined that Mrs. Patronelli "would have not benefitted in any way from an award of counsel fees," because she was not financially obligated to her attorney. *Id.* at 562. Our statute differs significantly from that of North Carolina, because it makes no mention of "for the benefit of [a dependent] spouse."

Finally, Mr. Henriquez asserts that prior to the enactment of fee shifting statutes in the family law area, reimbursement for receipt of a gratuity was not permitted in the marital arena, citing *Mason v. Mason,* 181 Md. 666, 30 A.2d 748 (1943), so that analogously, Mrs. Henriquez could not have been awarded attorneys' fees when she did not incur any expense for legal fees. In *Mason,* we upheld the denial of alimony pendente lite to Lela Drucilla Mason, after consideration of factors similar to those found in Section 12–103. We reasoned that Mrs. Mason was employed earning "$7 or $8 a week" and was living with her brother-in-law where she "was not required to pay any board," while Mr. Mason, her husband, owned a modest farm, "was without any other financial means," and was unable to work steadily because of poor health. Clearly, in *Mason,* we emphasized the balance of the parties' financial resources, rather than merely Mrs. Mason's gratuitous receipt of room and board. Here, the Circuit Court also engaged in balancing under Section 12–103, finding that Mrs. Henriquez was "wholly dependent" and "virtually penniless," warranting an award of attorneys' fees, given Mr. Henriquez's financial ability.[11]

---

**11.** Mr. Henriquez also cites *Rubin v. Rubin,* 233 Md. 118, 195 A.2d 696 (1963) and *Corapcioglu v. Roosevelt,* 170 Md.App. 572, 907 A.2d 885 (2006), for the proposition that only expenses personally incurred by a spouse are compensable under Section 12–103. In *Rubin,* we considered whether Mrs. Rubin could recover expenses of a private investigator employed to "gather evidence of the husband's adulteries." 233 Md. at 124, 195 A.2d at 699. We noted that "in a divorce action the wife, when she is without independent means of her own, has the right to require her husband to defray the expenses incurred by her in the suit," *id.* at 125, 195 A.2d at 699, citing *McCurley v. McCurley,* 60 Md. 185, 189 (1883), and determined that Mr. Rubin was required to pay "such part of the [investigator's] charges as remained unpaid." *Id.* at

Therefore, we conclude that Section 12–103 permits an award of counsel fees when a prevailing party initially receives legal representation from a non-profit legal services organization on a pro bono basis, as here.  As aptly noted by our intermediate appellate court, "pursuant to the plain language of the statute, there is no *per se* bar to awarding attorney's fees to a party who is represented by a non-profit organization that provides the party with free legal representation." *Henriquez*, 185 Md.App. at 478, 971 A.2d at 353.

■■■ We turn now to whether the Circuit Court for Montgomery County properly awarded attorneys' fees directly to the House of Ruth. Mr. Henriquez asserts that Section 12–103(a) imparts counsel fees to a "party and not the attorney or for the use of the attorney," and that if Mrs. Henriquez received $5,000 she would receive a windfall.  Mrs. Henriquez counters that an award of counsel fees, directly to the House of Ruth, avoids this allegation of windfall and comports with the reasoning of a majority of jurisdictions that have considered the issue.

129, 195 A.2d at 702.  Our determination in *Rubin* supports our holding in the present case, because Mr. Rubin, by virtue of his financial ability, was required to pay the investigator for services rendered to Mrs. Rubin.

Similarly, in *Corapcioglu*, our intermediate appellate court considered an award of costs and counsel fees pursuant to Section 12–103, in connection with a mother's efforts to secure the return of her son, who was abducted by his father to Turkey.  170 Md.App. at 580, 907 A.2d at 890.  At issue in that case was whether Ms. Roosevelt could recover a $200,000 fine against Mr. Corapcioglu, as well as $252,930 in "fees and costs," both based upon her significant expenditures in reuniting with her son.  *Id.* at 609, 907 A.2d at 907.  The Court of Special Appeals vacated the $252,930 judgment to the extent that it "duplicat[ed]" the $200,000 fine, reasoning that an award of counsel fees and costs under Section 12–103 is "compensatory in nature." *Id.* Mr. Henriquez points to this dicta, asserting that an award of counsel fees in the present case would not compensate Mrs. Henriquez, because she incurred no financial obligation to the House of Ruth. Basically, Mr. Henriquez infers that the award would be a windfall to Mrs. Henriquez under the *Corapcioglu* rationale, when, in reality, Mr. Henriquez would receive a windfall from his wife's impoverishment, in the face of his ability to pay.

Mr. Henriquez essentially asserts that because Sections 7–107,[12] 8–214,[13] and 11–110 [14] of the Family Law Article, Mary-

12. All references to Section 7–107 throughout are to the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.), governing fee shifting in divorce proceedings, which states in relevant part:

(a) *Definition.*—In this section, "reasonable and necessary expense" includes:

(1) suit money;

(2) counsel fees; and

(3) costs.

(b) *Award authorized.*—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

(c) *Considerations by court.*—Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding.

\* \* \*

(f) *Counsel fees.*—As to any amount awarded for counsel fees, the court may:

(1) order that the amount awarded be paid directly to the lawyer; and

(2) enter judgment in favor of the lawyer.

13. All references to Section 8–214 throughout are to the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.), governing fee shifting in property disposition in annulment and divorce matters, which provides in pertinent part:

(a) *Definition.*—In this section, "reasonable and necessary expense" includes:

(1) suit money;

(2) counsel fees; and

(3) costs.

(b) *Award authorized.*—At any point in a proceeding under this subtitle, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

(c) *Considerations by court.*—Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding.

\* \* \*

(f) *Counsel fees.*—As to any amount awarded for counsel fees, the court may:

(1) order that the amount awarded be paid directly to the lawyer; and

land Code (1984, 2006 Repl.Vol.), expressly permit a prevailing party fee award to be paid directly to an attorney, that Section 12–103 must prohibit such an award to be paid to the attorney, rather than to a party.[15]

---

(2) enter judgment in favor of the lawyer.

**14.** All references to Section 11–110 throughout are to the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.), governing fee shifting in alimony proceedings, which states in relevant part:

(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

(2) "Proceeding" includes a proceeding for:

(i) alimony;

(ii) alimony pendente lite;

(iii) modification of an award of alimony; and

(iv) enforcement of an award of alimony.

(3) "Reasonable and necessary expense" includes:

(i) suit money;

(ii) counsel fees; and

(iii) costs.

(b) *Authority of court.*—At any point in a proceeding under this title, the court may order either party to pay to the other party an amount for the reasonable and necessary expense of prosecuting or defending the proceeding.

(c) *Required considerations.*—Before ordering the payment, the court shall consider:

(1) the financial resources and financial needs of both parties; and

(2) whether there was substantial justification for prosecuting or defending the proceeding.

\* \* \*

(f) *Counsel fees.*—As to any amount awarded for counsel fees, the court may:

(1) order that the amount awarded be paid directly to the lawyer; and

(2) enter judgment in favor of the lawyer.

**15.** In construing similar language providing an award to be paid to the attorney, many of our sister courts have permitted an award of attorneys' fees directly to the pro bono attorney or legal services organization when the prevailing party initially obtained representation on a pro bono basis. *See In re the Marriage of Swink*, 807 P.2d 1245, 1247–48 (Colo.App.1991) (determining a court may enter an order "requiring a party to pay a reasonable sum for legal services rendered to the other party by a *pro bono* attorney in dissolution of marriage proceedings," interpreting Colo.Rev.Stat. § 14–10–119 (1987 Repl.Vol. 6B), which stated that "[t]he court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under [the Act] and for attorney's fees, including sums for

■ Section 12–103 does not contain language that provides for payment of attorneys' fees directly to an attorney, as in Sections 7–107, 8–214, and 11–110. Nevertheless, these statutes comprise one family law scheme and are in *pari materia* so that they are construed "by reference to other statutes dealing with the same subject." *Willis v. State,* 302 Md. 363, 375, 488 A.2d 171, 178 (1985); *see* 2B Norman J. Singer, et al., Sutherland Statutory Construction § § 53:1 to 53:3 (7th ed. 2008); *see also Maryland Green Party v. Maryland Bd. of Elections,* 377 Md. 127, 178 n. 4, 832 A.2d 214, 244 n. 4 (2003) ("A statute should be so construed that all its parts harmonize with each other and render them consistent with its general object and scope."); *Maryland–National Capital Park and Planning Comm'n v. Anderson,* 395 Md. 172, 199, 909 A.2d 694, 710 (2006) (Harrell, J., dissenting) ("[W]hen a statute 'is part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be

---

legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name."); *Hale v. Hale,* 772 S.W.2d 628, 630 (Ky.1989) (reasoning an award of attorneys' fees to Attorney Richard Born, who agreed to represent Mrs. Hale "without charge" was proper, interpreting Ky.Rev. Stat. Ann. § 403.220, which "specifically provides that the court may order that the amount allowed be paid directly to the attorney who may enforce the order in his name"); *In re the Marriage of Gaddis,* 632 S.W.2d 326, 328 n. 1, 329 (Mo.Ct.App.1982) (determining that Mo.Rev. Stat. § 452.355 (1978), which stated that a court "from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount . . . for attorney's fees. . . . The court may order that the amount be paid directly to the attorney, who may enforce the order in his name," permitted an award of attorney's fees to "a Legal Aid attorney as well as any other attorney"); *In re the Marriage of Malquist,* 266 Mont. 447, 880 P.2d 1357, 1364 (1994) (reasoning that although "awarding attorney fees to the indigent client represented by Montana Legal Services Association or a *pro bono* attorney, would, in fact, be a windfall to the client, that result can be easily avoided by the court simply awarding the fee directly to Legal Services or to the attorney, as is permitted by § 40–4–110, MCA," which provided that a court may " . . . order that the amount [awarded] be paid directly to the attorney, who may enforce the order in his name"), *overruled on other grounds by In re Marriage of Cowan,* 279 Mont. 491, 928 P.2d 214 (1996).

discerned by considering it in light of the statutory scheme,' and when 'in that scheme, two statutes, enacted at different times and not referring to each other ... address the same subject, they must be read together ... *i.e.,* interpreted with reference to one another, ... and harmonized ....' " (alterations in original)).

In *Willis,* 302 Md. at 365, 369, 375, 488 A.2d at 172–74, 179, we considered whether the trial court erred in admitting evidence of Willis's blood alcohol test results in a prosecution for manslaughter by automobile. In that case, we interpreted the meaning of the verb "apprehended" in Section 10–303 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol.), which governed the timing of administering a blood alcohol test, in reference to the verb "detained" in Section 16–205.1 of the Transportation Article, Maryland Code (1977, 1981 Supp.), dealing with the procedure for administering such a test. In doing so, we recognized the value of cohesively interpreting statutes having the same object, reasoning:

> Harmonizing these statutory provisions in this manner avoids needless conflict between statutes having the same object: the identification and removal of drunk drivers from Maryland's highways.

*Id.* at 376, 488 A.2d at 178.

Similarly, Section 12–103 must be construed in harmony with Sections 7–107, 8–214, and 11–110, governing fee shifting in divorce, marital property disposition, and alimony matters, respectively. To do otherwise would foster the illogical result of permitting an award of fees directly to an attorney when a party prevails in a divorce proceeding on fault grounds, or when a party obtains a monetary award and could then pay the attorney, or when a party receives alimony, but not permitting an award of fees directly to an attorney in a determination of physical custody of children, in which each party "has equal constitutional rights to parent" and at stake is the "best interests" of the children. *See McDermott v. Dougherty,* 385 Md. 320, 354, 869 A.2d 751, 771 (2005); *see*

*also Ricketts v. Ricketts,* 393 Md. 479, 501, 903 A.2d 857, 869–70 (2006), and cases cited therein.

In so holding, we find succor in cases similar to the case *sub judice,* from sister jurisdictions interpreting statutory provisions analogous to Section 12–103. In *Pearson v. Pearson,* 200 W.Va. 139, 488 S.E.2d 414 (1997), the Supreme Court of Appeals of West Virginia considered Ms. Pearson's request for attorneys' fees in a divorce action, which was denied by the circuit court, because she was represented by the Appalachian Research and Defense Fund, a non-profit legal services organization. *Id.* at 425. Ms. Pearson further contended that "she was inhibited from effectively prosecuting her divorce," because she relied upon free legal services and sought an award of counsel fees personally. The court interpreted a fee shifting provision that did not expressly provide for an award of counsel fees directly to an attorney, which stated:

> The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court. The question of whether or not a party is entitled to temporary alimony is not decisive of that party's right to a reasonable allowance of attorney's fees and court costs....

*Id.* at 425–26 n. 12. In determining that attorneys' fees in a divorce proceeding "may be awarded to a party who received free legal aid services or pro bono legal representation," the court concluded that "such an award is to compensate and reimburse for legal services rendered and shall not be paid to the litigant." *Id.* at 426; *see also Benavides v. Benavides,* 11 Conn.App. 150, 526 A.2d 536, 539 n. 2 (1987) (reasoning that "[t]o avoid a windfall to the plaintiff, the award of attorney's fees should be made directly to the organization providing the legal services," interpreting Conn. Gen.Stat. § 46b–62, which provided that "the court may order either spouse to pay the reasonable attorney's fees of the other"); *Miller v. Wilfong,* 121 Nev. 619, 119 P.3d 727, 730–31 (2005) (determining an award of attorneys' fees to pro bono counsel was proper, reasoning that "[t]o impose the burden of the cost of litigation on those who volunteer their services, when the other party

has the means to pay attorney fees, would be unjust," considering Nev.Rev.Stat. § 126.171, which stated that "[in paternity actions,] [t]he court may order reasonable fees of counsel . . . to be paid by the parties in proportions and at times determined by the court" (alterations in original)); *Olson v. Olson*, 438 N.W.2d 544, 548 (S.D.1989) (concluding that while Mrs. Olson was "not obligated to pay attorney fees, she is obligated to turn over to [the non-profit legal services provider] any fees which are awarded to her," interpreting former S.D. Codified Laws § 15–17–7, "empower[ing] courts to award attorney fees in a divorce case").[16]

Thus, an award of counsel fees comports with the plain meaning of Section 12–103, when, as here, a prevailing party initially receives pro bono legal representation from a nonprofit organization and that award may be made directly to the House of Ruth.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

Judge MURPHY joins the judgment only.

---

**16.** *See also* Gerald T. McLaughlin, *The Recovery of Attorney's Fees: A New Method of Financing Legal Services,* 40 Fordham L.Rev. 761, 770 (1971–72) ("Obviously a person who does not pay for an attorney should not recover attorney's fees. When the person is represented by legal services, any award of counsel fees should be paid directly to legal services itself.").